## REED et al. v. HUGHES TOOL CO.*

(Circuit Court of Appeals, Fifth Circuit.   July 5, 1922.)

No. 3741.

Patents ⊜329—930,759, for improvement in rotary drills, held valid and infringed.

The Hughes patent, No. 930,759, for an improvement in rotary drills, ultilizing the water used to force the material cut from the well to serve the further purpose of automatically applying lubricating oil to the drill bit, *held* valid and infringed.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Suit by the Hughes Tool Company against Clarence E. Reed and another. From a decree for plaintiff, defendants appeal. Affirmed.

Edward Rector, of Chicago, Ill., Wm. F. Hall, of Washington, D. C., and B. F. Louis, of Houston, Tex., for appellants.

John A. Mobley and Jesse R. Stone, both of Houston, Tex., and Melville Church, of Washington, D. C. (F. C. Proctor, C. R. Wharton, Baker, Botts, Parker & Garwood, and Andrews, Streetman, Logue & Mobley, all of Houston, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge.   This is an appeal from a decree holding valid and infringed certain claims of patent No. 930,759, issued August 10, 1909, to Howard R. Hughes, now owned by appellee, the Hughes Tool Company.

The patent was for an improvement in rotary drills, used principally in drilling oil wells. Such wells are drilled by means of drill pipes and bits. The bits are attached to the lower ends of the pipes. In operation, the bits are made to cut through the earth by rotating the pipes. The bits are greater in diameter than the pipes to which they are attached, and consequently there is left a space between the pipes and the outside wall of the well. In order to remove the cuttings from the bottom of a well to the surface, water is forced down through the pipes and openings in the drill bits, and up between the pipe and the wall of the well.

Improvements in the art of well drilling have resulted in the use of rotary drill bits. It is essential that these bits should be lubricated. One of the important features of the patent in suit is a chamber or reservoir designed for the purpose of being filled with lubricating oil to be supplied to the drill bits; and another feature is to utilize the downward pressure of the water through the drill pipe, so as to force the lubricating oil into and around the drill bits. The patent in suit undertook to accomplish these objects by means of a removable plug at the upper end of the oil chamber, to which is attached a spring, and beneath the latter a piston or plunger. But, in reference to such device specifically described, specifications of the patent contain the following:

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 258 U. S. —, 43 Sup. Ct. 99, 67 L. Ed. —.

"While I have herein stated that the lubricant is distributed to the surface on·which the rollers bear by means of a spring-pressed plunger, I do not wish it to be understood that my broad idea is limited to such a structure, for, if desired, any other suitable propelling medium than a spring could be employed, or the plug *16* and spring *15* could be removed, and thus permit the pressure of the water which is forced through the operating member *3* to act directly on the plunger *14*, and force the lubricant through the ducts and grooves."

The claims of the patent call for:

"17. * * * Means arranged adjacent the head for holding a mass of lubricant, and means adapted to be acted upon by the water that is forced through said operating member for supplying the lubricant to the bearings of the cutting rollers.

"18. * * * Means for holding a lubricating medium, and means for introducing water into the hole being formed to flush out the disintegrated material, and also supply said lubricating medium to the surface of the head on which the cutting rollers bear.

"19. * * * A lubricant holder, ducts leading from said holder to the bearings of said rollers, and a hollow operating member * * * for introducing water into the hole being formed so as to flush out said hole, and also exert pressure on the lubricant in said holder.

"20. * * * A lubricant holder arranged * * * so that the force of the water * * * will be exerted on the lubricant, and ducts leading from said lubricant holder conducting the lubricant to the surface of the head with which the cutting rollers contact.

"21. * * * A hollow lubricant holder * * * and means for conducting the lubricant in said holder to the surfaces of the head on which the cutting rollers bear, the pressure of the water that is forced through said hollow ·operating member being exerted on the lubricant, and thus applying it automatically to said bearing surfaces.

"22. * * * A hollow member * * * and ducts leading from said hollow member to the bearings of said rollers, the pressure of the water that is forced through the tubular shaped operating member causing the lubricant to be forced through said ducts.

"23. * * * A hollow member * * * to contain a lubricant, ducts leading from said hollow member to the ·bearings of said rollers, and a plunger for forcing the lubricant through said ducts, said plunger being subjected to the pressure of the water that passes through the operating member, and thus causing the lubricant to be automatically supplied to the rollers."

It was admitted by appellee that the plug and spring, described in the drawings accompanying the application for patent, were not practical at great depths; but it was shown that at a depth of 4,000 or 5,000 feet, or more, lubrication was successfully supplied to the drill bits by removing the plug and spring, and relying alone upon the plunger, and there was some testimony that, even without the plunger, the lubrication was successful and satisfactory where the lubricant used was very heavy oil, but that with the lighter lubricant in common use in oil wells a perforated cap or baffle plate, instead of a solid plug, at the head of the lubricant chamber, was found desirable, if not necessary.

The patentee, Hughes, applied for an amendment to his patent, so as to include such perforated cap or baffle plate; but his application was denied. Whereupon he applied for and was granted on May 31, 1910, an additional patent, No. 959,539, covering specifically the use of the perforated cap. It would be useless to attempt to describe the lubricating device used by appellants in their competitive drill bits. In that connection it is sufficient to say that it was admitted by the expert witness of appellants, who furnished the only evidence in justification

of the alleged infringement, that there is no substantial difference between appellee's lubricating device and that of appellants.

The bill of appellee also alleged that appellants were infringing other patents for rotary drills. But inasmuch as the injunction prayed for as to them was refused by the court, and appellee has not appealed, the only question on this appeal is whether the court below erred in holding valid and infringed the claims of patent No. 930,759, covering appellee's lubricating device. It is contended that the decree was erroneous, upon the grounds: (1) That the lubricating device patented is not useful or operable; (2) that the representation of the best mode of operating the device particularly described in the specifications, and shown by the drawings, was untrue and misleading; and (3) that the device was not a patentable improvement upon the prior art.

1. We are of opinion that the device of the patent in suit is useful and operable. The claims of that patent are clearly for much more than the method of operation by plug and spring, and are infringed by the lubricating device used by appellant, even if it be conceded, as contended, that the taking out by Hughes of a subsequent patent for a perforated cap estops him and appellee from now insisting that such perforated cap is covered by the first patent and is only an improvement which would have occurred to one skilled in the art.

2. The contention that Hughes concealed the defects of his patent, and that his conduct was such as to lead the public to believe that his invention could be successfully operated by the use of plug and spring, is without force or effect, in view of the prompt action taken by Hughes to secure, first by amendment, and then by an independent patent, protection in the use of the perforated cap.

3. It appears from the evidence that several expired patents contain the idea of applying lubricating oil to machinery by pressure, either of air, steam, or water. But it is not seriously contended that any prior patent anticipated the idea expressed in the Hughes patent to so utilize the water, which is forced down through the drill pipe and the cutting device, for the purpose of forcing the material cut up between the pipe and the wall of the well to the surface of the ground, as to make it serve the further purpose of automatically applying the lubricating oil to the drill bit at the bottom of the well. The additional idea that, when water was not being forced through the drill pipe, the flow of the lubricant would be stopped, or practically so, and thus save waste, appears to have been new.

The invention of Hughes met a great need in the oil industry, and was undoubtedly a very valuable improvement upon the prior art. The principles of law which govern this case are well stated in 20 R. C. L. 1125, and 1126, where a large number of Supreme Court cases which sustain the text are cited, as follows:

"A combination is a composition of elements, some of which may be old and others new, or all old or all new. It is, however, the combination that is the invention, and is as much a unit in contemplation of law as a single or noncomposite instrument. The authorities establish the following propositions respecting the patentability of devices or processes of this character: (1) That a combination is patentable if it produces new and useful results, though all its constituents were well known and in common use before it was made, provided the results are a product of the combination, and not a mere aggre-

gate of several results, each the product of one of the combined elements. (2) If it produces a different force, effect, or result in the combined forces or processes from that given by their separate parts, and a new result is given by their union. (3) If it either forms a new machine of distinct character or formation, or produces a result which is not the mere aggregate of separate contributions, but is due to the joint and co-operating action of all the elements. (4) When the several elements of which it is composed produce by their joint action either a new and useful result, or an old result in a cheaper or otherwise more advantageous way.

"Particular changes may be made in the construction and operation of an old machine, so as to adapt it to a new and valuable use not known before, and to which the old machine had not been, and could not be, applied without those changes, and, under those circumstances, if the machine, as changed and modified. produces a new and useful result, it may be patented, and the patent will be upheld under existing laws. Such a change in an old machine may consist merely of a new and useful combination of the several parts of which the old machine is composed, or it may consist of a material alteration or modification of one or more of the several devices which entered into its construction, and whether it be one or the other, if the change of construction and operation actually adapts the machine to a new and valuable use not known before, and it actually produces a new and useful result, then a patent may be granted for the same, and it will be upheld as a patentable improvement. But a combination, to be patentable, must not be merely an aggregation of separate elements or of old results, each working out its own effect without producing anything novel, or a mere mechanical juxtaposition; it must form either a new machine of a distinct character and function, or producing a result due to the joint and co-operating action of all the elements."

We think the invention is patentable, because it is new and is not the mere aggregate of separate contributions, but is the result of their joint action. It is apparent from the evidence, as well as from a comparison of the lubricating devices used by the parties to this suit, that appellants have infringed upon the claims of the patent owned by appellee. We think appellee is entitled to protection, not only against the use of the perforated cap. but also to the broader protection of an injunction against any infringement.

The decree is affirmed.