**HUGHES TOOL CO. v. OWEN et al.**
No. 74.

District Court, N. D. Texas,
Abilene Division.

June 30, 1941.

The complainant, Hughes Tool Company, sells the use of these bits to drillers. The life of the teeth is dependent upon the nature of the earth or rock in the hole, and runs from a few hours to much longer periods of time. When the teeth, or steel points, are new and sharp they are more effective. As the teeth become worn and dull, the progress becomes slower until eventually the drill stem is drawn from the hole and the bit removed. The driller can either discard the bit and get another, or he may have the teeth sharpened or re-tipped. The re-tipping consisted of drawing out the teeth to the original length and sharpness by means of an acetylene torch applied simultaneously to the tooth and a steel rod.

The patents allegedly infringed were the Scott and Wellensick No. 1,647,753 and the Fletcher No. 1,856,627, covering the drilling bit as a whole, but with special reference to the arrangement of the teeth as to position upon the cone.

The question in the case is whether the defendant, in sharpening the teeth, was rebuilding the bit or repairing it. If he was rebuilding it, then he is guilty of an infringement.

There have been some recent decisions bearing upon this question, but the most analytical and complete discussion of the distinction between repair and reconstruction is perhaps contained in the case of Wilson v. Simpson, 9 How. 109, 50 U.S. 109, 122, 13 L.Ed. 66. That case, like the present one, involved a great time and labor saving device. The present patent deals with an oil drilling rotating bit. The Woodworth patent in the Wilson case had to do with the bits in a planing mill. The pioneer would hew his timbers from the trees of the forest. Later a sawmill appeared, crude at first, cutting rough, undressed boards covered with small splinters. The builder had to take a hand plane and dress these splinters from the plank. It was a laborious and slow process, but many of the older homes standing were made of hand-dressed lumber.

About this time there appeared the Woodworth machine. It not only dressed the plank, but it had an appliance that cut a groove in one edge and put a tongue in the other, which made a very air-tight flooring when the tongue was fitted into the groove. The knives, or cutters, for this dressing service, like the rotary bit in the present case, could only be used for a lim-

Haight, Goldstein & Hobbs, of Chicago, Ill., Wagstaff, Harwell, Douthit & Alvis, of Abilene, Tex., and Andrews, Kelley, Kurth & Campbell, of Houston, Tex., for plaintiff.

Carl P. Springer, of Abilene, Tex., for defendants.

DAVIDSON, District Judge.

This is a patent case. The complainant, Hughes Tool Company, charges an infringement upon a patented drilling bit. The complainant operates a large plant employing some 3,600 persons at Houston, Texas. The defendant is a blacksmith or a welder, employing himself and his son. The drilling bit, sometimes referred to as a rotary bit, contains three pieces of cone-shaped steel, fastened within a partial housing to the end of a drill stem, used in drilling oil wells. The cones have the general shape of a pine burr. There is placed upon them teeth or jagged steel points, and as the bit rotates and the cones revolve, these cones wear away the rock or earth beneath the drill stem and thus make the hole into the earth.

ited period, when they had to be either sharpened or replaced. The court said of the Woodworth patent in the Wilson case:

"The specifications under the general proposition are, that the defendants have substituted other machines for those used by them, before the expiration of the first term of Woodworth's patent. That they have reconstructed Woodworth's entire combination in the frames of their old machines, or supplied an essential constituent part of it, to continue in use those machines. * * *

"It does not follow, when one of the elements of the combination has become so worn as to be inoperative, or has been broken, that the machine no longer exists, for restoration to its original use by the owner who has bought its use. When the wearing or injury is partial, then repair is restoration, and not reconstruction. * * Repairing partial injuries, whether they occur from accident or from wear and tear, is only refitting a machine for use. And it is no more than that, though it shall be a replacement of an essential part of a combination. It is the use of the whole of that which a purchaser buys, when the patentee sells to him a machine; and when he repairs the damages which may be done to it, it is no more than the exercise of that right of care which every one may use to give duration to that which he owns, or has a right to use as a whole. * * *

"The complaint now is, that the defendants, in the use of their old machines, have replaced new cutters for those which were worn out. * * * The right of the assignee to replace the cutter-knives is not because they are of perishable materials, but because the inventor of the machine has so arranged them as a part of its combination, that the machine could not be continued in use without a succession of knives at short intervals. Unless they were replaced, the invention would have been but of little use to the inventor or to others. * * * The inventor cannot complain, if he sells the use of his machine, that the purchaser uses it in the way the inventor meant it to be used, and in the only way in which the machine can be used."

In 20 Ruling Case Law 1159, we find the distinction between repair and reconstruction of a patented article treated in the following language: "Of course, when the substance of a patented article ceases to exist, there can be no right to renew or reconstruct it unless by consent of the pat-

entee, but repairing partial injuries, whether they occur from accident or wear and tear, is only refitting a machine for use. And it is no more than that, though it shall be a replacement of an essential part of a combination. It is the use of the whole of that which a purchaser buys, when the patentee sells to him a machine; and when he repairs the damage which may be done to it, it is no more than the exercise of that right of care which everyone may use to give duration to that which he owns, or has a right to use as a whole."

This distinction is further considered in the case of Morrin v. Robert White Engineering Works, 2 Cir., 143 F. 519, 520: "It was not seriously disputed at the argument that the repair of a single tube would not infringe the claim. It is equally clear that replacing the entire series is an infringement. Between these two extremes lies a debatable ground, the precise limits of which cannot be determined in advance. Whether the bounds of legitimate repair have been exceeded must be determined upon the facts of each case as it is presented. The mere fact that the patentee is able and willing to replace the injured part and make the repair is not alone sufficient to vest in him a monopoly of this work. If the purchaser sees fit to make necessary repairs himself, or employs others for that purpose, he has a right to do so, even though it is shown that he has theretofore been guilty of infringement."

In the case of Goodyear Shoe Machinery Co. v. Jackson, et al., 1 Cir., 112 F. 146, 147, 55 L.R.A. 692, the editor in the syllabus says that which we think is applicable here: "No general rule can be laid down by which to determine the line of demarcation between legitimate repairs which a purchaser of a patented machine may rightfully make thereon and a reconstruction or reproduction, which will constitute infringement. Each case must, in that regard, be decided on its own facts, having reference to the scope and purpose of the invention and the fair and reasonable intention of the parties."

In the above case Judge Colt, of the First Circuit, said:

"The purchaser of a patented machine, in order to infringe, must make or reproduce, in substance, the whole patented invention. * * * When the machine is worn out, or substantially destroyed, his right to use the patented invention ceases; and when he rebuilds his machine, and thereby makes

substantially a new machine, it becomes subject to the patentee's monopoly, the same as in the case of any other person who unlawfully makes the patented machine. * * * He is only prohibited from constructing a substantially new machine. * * * A purchaser, then, may repair, but not reconstruct or reproduce, the patented device or machine. * * *

"But the difficult question still remains, what is legitimate repair, and what is reconstruction or reproduction as applied to a particular patented device or machine? * * * the question * * * should be determined less by definitions or technical rules than by the exercise of sound common sense and an intelligent judgment. * * *

"In the case of a patent for a planing machine composed of many parts it was held that the replacement of the rotary knives, 'the effective ultimate tool' of the machine, was repair, and not reconstruction. Wilson v. Simpson, 9 How. 109, 13 L.Ed. 66."

■ It is insisted that the very question now before the court has been determined in the case of Hughes Tool Company v. United Machine Co., D.C., 35 F.Supp. 879, but an examination of the questions involved will show they are quite different. The United Machine Company case questioned the validity of the patent itself, which is not questioned here, and in that case the defendant was admittedly rebuilding the drill points, taking them to pieces, retempering them, repairing the inside and doing whatever was necessary to restore the original bit. Moreover, in that case the defendant was buying up used bits and old bits, and repairing and selling them. In the present case the defendant is the agent or employee of the plaintiff's lessees, who have the legal right to sharpen the bits, provided such act does not amount to rebuilding to the extent of infringement.

In the case of Southwestern Tool Co. v. Hughes Tool Co., 10 Cir., 98 F.2d 42, 44, we find another case dealing directly with the patent upon this type of rotary bit. The questions involved were set out in the court's opinion as follows: "The offending acts of infringement upon which the decree rests consist of purchasing worn out cones from drillers and junk dealers, rebuilding or restoring the teeth, sometimes furnishing new bushings and new retaining rings, and then selling them back to customers of plaintiff for reuse in connection with the bit heads originally purchased from plaintiff."

In the case at bar the defendant is not in the business of purchasing and selling. He does not take down the bit and rework its interior, but confines his action to that of sharpening the one element of the patent described as the teeth. It was in evidence during the trial, and without any substantial contradiction, that the defendant would not rebuild the worn out bits, but worked only upon partially worn bits, called "green" bits, "green" bits being a term in oil field parlance applied to bits that had grown dull, but were still capable of doing service.

It is conceded by all parties that the user of a patented article may sharpen or make such repairs as do not amount to reconstruction. It is insisted, however, that the repairs if any must be by grinding or filing and not by splicing or grafting. Taking into consideration such machines as dredges, slips and large plows, in almost every case where the point is sharpened it is done by grafting on a new piece of steel. In fact, as a matter of necessity, where the repair is occasioned by wear, it cannot be overcome by filing or grinding, and the only way in which the repair can be made would be by welding or grafting process.

Inasmuch as this case differs from the two Hughes Tool Company cases recently decided (98 F.2d 42, 44, and 35 F.Supp. 879, 885,) we think that the present case comes within those broader and well-established principles set forth in the earlier decision of the Wilson case, 9 How. 109, 50 U.S. 109, 13 L.Ed. 66, and the Goodyear case, 1 Cir., 112 F. 146, 55 L.R.A. 692.

■ The second question raised is the right of the plaintiff to an injunction or any form of restraining order, even though there may have been an infringement. The evidence, briefly stated, shows that counsel for the plaintiff discussed the matter with the defendant prior to the two late decisions dealing with the Huges Tool Company's patent, and whether or not the particular work that the defendant was doing upon the bits amounted to an infringement was also discussed, and the parties seem to have left it in an advisory state. Afterward the plaintiff sued the defendant in the State district court to sequester some 17 bits that he had in his shop. There is some conflict as to what was done with the bits, but it appears that they found their way back to the persons who were entitled to the legal possession, and who had turned

them over to the defendant to be sharpened. They were not taken into possession by the sheriff. As a result of the institution of such sequestration suit, the defendant caused to be drafted an agreement or a paper dated the 20th day of March, 1940, in which he agreed to further desist from sharpening or in any manner repairing the bits of the plaintiff. The paper was signed by the defendant and delivered to the plaintiff long before the filing of this complaint. From that time forward the defendant did not handle any bits of the Hughes Tool Company, but did repair and sharpen some bits known as Reed bits, the property of a different concern. The plaintiff insists that even though the defendant had discontinued sharpening the bits or rebuilding them, they were entitled to the injunction nevertheless, on the theory that an injunction in a patent case is based upon statutes rather than upon the rules of equity that control other restraining orders. We find, however, that the statute in question, Section 70, Title 35, U.S.C.A., confers certain powers upon the courts with reference to the granting of injunctions: "The several courts vested with jurisdiction of cases arising under the patent laws shall have power to grant injunctions according to the course and principles of courts of equity."

In Blease v. Safety Transit Co., 4 Cir., 50 F.2d 852, 856, the court used the following language: "Under such circumstances, the injunction was properly denied; for it is elementary that a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do."

See, also, Securities & Exchange Commission v. Torr, 2 Cir., 87 F.2d 446.

Our attention is also called to the recent decision of Judge Hutcheson of this circuit in N.L.R.B. v. Ford Motor Co., 119 F.2d 326, 329, in which the rule applicable is stated: "Injunctions will not issue to prevent practices which have not only been discontinued but of the recurrence of which there is no reasonable likelihood." United States v. United States Steel Corp., 251 U.S. 417, 40 S.Ct. 293, 64 L.Ed. 343, 8 A.L.R. 1121; Silver Co. v. Federal Trade Commission, 6 Cir., 292 F. 752; N.L.R.B. v. Delaware-New Jersey Ferry Co., 3 Cir., 90 F.2d 520.

We think the facts in this case are clearly distinguishable from those set forth in either the Machine Company case or the Southwestern Tool Company case. We do not think there was any rebuilding of the patent, but merely the sharpening of an instrument or tooth that entered into the mechanism of the patent, and, so finding, judgment will be rendered in favor of the defendant and the restraining order refused.