**ROBERTSON ROCK BIT CO., Inc., et al. v. HUGHES TOOL CO.**

**No. 12690.**

United States Court of Appeals
Fifth Circuit.

Aug. 13, 1949.

Rehearing Denied Sept. 22, 1949.

As Amended Sept. 27, 1949.

SIBLEY, Circuit Judge, dissenting in part.

R. C. Milling, New Orleans, La., Floyd H. Crews, New York City, Harvey W. Mortimer, New York City, for appellants.

Robert F. Campbell, Houston, Tex., Geo. I. Haight, Chicago, Ill., Edward A. Haight, Chicago, Ill., John Humphrey, Wichita Falls, Tex., for appellee.

Before HUTCHESON, SIBLEY and WALLER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellee, Hughes Tool Company, plaintiff below, manufactures and for many years has manufactured and sold by the tens of thousands rotary drilling bits used extensively in the drilling of oil wells.

Appellant, Industrial Manufacturing & Tool Co., was organized, by Colin T. Robertson, in March, 1947, and, until going out of business a few months afterwards, because sued by Hughes, it manufactured about 200 bits of like kind with those Hughes now manufactures.

Appellant, Robertson Rock Bit Company, Inc., organized by Robertson after, and because of, Industrial's going out of business, also engaged in the manufacture of a like bit, making about 250 of them in all.

Defendant, Colin T. Robertson, has been the prime directing force behind the activities of both of the defendant companies, particularly as regards the practices claimed as infringing.

Plaintiff, alleging that the manufacture by defendants of this type bit infringed designated claims of four patents [1] owned by it, and that defendants had converted, and were continuing to convert, some of the bits, sued for patent infringement and conversion, and for an injunction restraining both.

The court finding validity, infringement, and conversion and against the defenses of want of title, misuse of patents and unclean hands, held valid and infringed all of the claims in suit, granted an injunction against further infringement and conversion, found unnecessary the appointment of a master to assess damages, and gave judgment [2] accordingly.

Here, presenting a sweeping attack upon the trier and the judgment, appellants assail the trial as inadequate and the judg-

[1] Claims 1, 2, & 3 of Fletcher pat. No. 1,856,627, 5-3-32, cutter for earth boring drills, now expired;

Claims 1, 2, and 3 of Scott & Garfield pat. No. 1,983,316, 12-4-34, three cone bit, having two years to run;

Claims 1, 2, & 3 of F. L. Scott, pat. No. 2,011,084, 8-13-35, mounting for drill cutters, having three years to run;

Claims 4, 6, 8, 12, 13, 14 & 15 of Garfield & Scott, pat. No. 2,030,442, 2-11-36, roller bearing bit, having four years more to run.

[2] (2) "That the Plaintiff is the owner of and entitled to sue for infringement of the Fletcher Patent No. 1856627; the Scott and Garfield Patent No. 1983316; the Scott Patent No. 2011084, and the Garfield and Scott Patent No. 2030442.

(3) "That claims Nos. 1, 2, and 3 of the Fletcher Patent No. 1856627; Claims Nos. 1, 2, and 3 of the Scott and Garfield Patent No. 1983316; Claims Nos. 1, 2 and 3 of the Scott Patent No. 2011084, and Claims Nos. 4, 6, 8, 12, 13, 14, and 15 of the Garfield and Scott Patent No. 2030442 are good and valid in law.

(4) "That the Defendants have infringed said claims of said patents.

(5) "That the Plaintiff does not sell rock bits of its manufacture in the United States, but leases them by valid and enforceable lease agreements under which title to the leased bits remains in the Plaintiff.

(6) "That the Defendants have converted and threaten to convert rock bits of the Plaintiff.

(7) "That a writ of injunction issue out of and under the seal of this Court, directed to the Defendants and each of

ment as erroneous in that: plaintiff's title to three of the patents, Fletcher, Scott, and Garfield and Scott, is insufficient; all of the patents are invalid for complete anticipation by, or want of, invention over named patents; there was a general misuse of patents; and there was noninfringement as to most of the claims in suit; and nonconversion of any of plaintiff's bits.

Urging upon us that Hughes has obtained many successive patents for the same thing, has filed many unfounded infringement suits,[3] has pretended to lease instead of sell its bits, and then threatened and sued for conversion persons who were merely exercising their right to repair them, appellants insist that Hughes has thereby acquired and, for many years, has obtained and continued an illegal and oppressive patent monopoly.

Citing as anticipation of the patents in suit, many patents, including some issued to Hughes, and calling to our attention many suits brought by Hughes under its patents, appellants insist that the time has come to declare invalid the patents sued on and thus to call a halt to these unjust and monopolistic practices.

Turning first to the general defenses applicable to all of the patents, misuse thereof and unclean hands, and of insufficient title applicable to all of them except Scott & Garfield, the three cone bit patent, we have no difficulty in reaching the conclusion that these defenses are without merit.

■ As to the leasing agreements and the practices of recovering used bits under them, the district court properly held them valid.

Aside from the fact that they have been, and are being used extensively by other manufacturers for handling products such as the plaintiff's, the evidence presented by Hughes shows that the method is practical, reasonable, and completely fair. In areas where drilling is being carried on and where the Hughes bits are used, field crews pick up all used bits and all worn out bits and examine them to see if there is any wear or unique feature in them which would require their being returned to the Houston laboratory. Many of these bits were returned to the Houston laboratory and were then examined in order that future bits might be designed in such manner that flaws appearing in the used bits would not again occur.

■ As to the claim of alleged misuse of patents in previous litigation, we find no more in it than the district judge found. It is quite plain that if it were sustained, it would amount to a holding that persons making bona fide claims against other persons for violation of their property rights in patented articles could not, by suit and threats of suit, obtain relief from those violations.

■ We agree, too, with the district court, that the claim that plaintiff failed to show title to patents No. 2011084 and No. 2030442 is completely without substance. If appellants were right in their claim that the legal title was not properly vested in plaintiff, this would not avail them, for the record leaves in no doubt that plaintiff was the real, the beneficial, owner. But the record does not sustain appellants, even on this technicality, for the instruments in evidence

them, perpetually enjoining and restraining them, their officers, agents, servants and employees from making, using or selling in any manner, directly or indirectly, any apparatus or device containing or embodying the inventions patented in or by Claims Nos. 1, 2 and 3 of the Fletcher Patent No. 1856627; Claims Nos. 1, 2 and 3 of the Scott and Garfield Patent No. 1983316; Claims Nos. 1, 2, and 3 of the Scott Patent No. 2011084, and Claims Nos. 4, 6, 8, 12, 13, 14 and 15 of the Garfield and Scott Patent No. 2030442, or any of said claims, and from converting any drill bits leased by the Plaintiff."

[3] Hughes Tool Co. v. International Supply Co., 10 Cir., 47 F.2d 490; Hughes Tool Co. v. Garber Tool Co., 16 U.S.P. Q. 97; Southwestern Tool Co. v. Hughes Tool Co., 10 Cir., 98 F.2d 42; Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 97 F.2d 945; Hughes Tool Co. v. United Machine Co., D.C., 35 F. Supp. 879; Williams Iron Works v. Hughes Tool Co., 10 Cir., 109 F.2d 500; Hughes Tool Co. v. Owen, D.C., 39 F. Supp. 656; Hughes Tool Co. v. Owen, 5 Cir., 123 F.2d 950; Hughes Tool Co. v. Williams, D.C., 82 F.Supp. 408.

clearly disclose that under Texas law the legal, as well as the equitable, title became vested in plaintiff. Burkburnett Refining Co. v. Ilseng, et al., 116 Tex. 366, 292 S.W. 179; Oklahoma Construction Co. v. Comm., 5 Cir., 153 F.2d 770.

We thus come to the issues of infringement and validity.

As to infringement, there is neither a frank admission, nor a frank denial, by all of the defendants, but a sort of "You said it, you prove it", half hearted denial by some of the defendants as to all of the claims, and by some of them as to some of the claims of all of the patents. That there was, however, infringement of some of the claims of some of the patents by some of the defendants is not seriously denied.

Defendant Robertson's testimony as to his knowledge of, and acquaintance with, Hughes' patents, and that the structures made under his direction and procurement were deliberately and carefully made with the intention of competing with Hughes, upon the advice of unnamed counsel that these structures were not covered by valid patents, when taken with the vigor of his defenses of anticipation of and lack of novelty and invention in the patents in suit, makes it clear that the twin like resemblances between plaintiff's and defendants' structures was not accidental. Indeed, the points of difference relied on by appellants as saving their structure from infringement are so finely drawn, so immaterial, so lacking in substance, such hair splitting as to be no more than camouflage to conceal or soften the starkness of appellants' deliberately planned piracy in the event the legal opinion on which they acted was not correct and it should turn out that the copied structures were not in the public domain.

Concerning ourselves, therefore, no further with the issues of infringement, we turn to the vital issues in the case, whether the patents are invalid for anticipation and want of invention.

The manufactured structures of both plaintiff and defendants may here be described generally as being rotary drilling bits having a base section from which three strong metal arms extend downward and outward. From the ends of these arms, shafts depart at an angle, still in a downward direction but in a path so that the three shafts, if extended, would converge at the center line of the bit. Rotating on these shafts are three cone-shaped cutters having teeth set in circumferential pattern. These cutters run on the shafts with the aid of bearings which serve to fix the cones on the shaft and also to take both lateral and cross stress. While at one time the bearings were lubricated by means of a special oil lubricator, the patent on which has been the subject of much litigation, the bearings on the structures in suit are lubricated by drilling fluid which is continually passed through the hole. The teeth on the several cutters are so placed that they interfit with the teeth of each of the other cutters without touching. Thus, in the drilling operation, as one portion of each cutter is scraping or chipping along the bottom of the hole, other portions are interfitting with the other cutters.

One of the patents in this litigation, Scott & Garfield, No. 1983316, 12-4-34, is for the interfitting three-cone rotary drilling bit. The structure of this bit is identical with that described as the manufactured structure in the foregoing paragraph except that this patent does not cover the bearing features. It covers a device the three cutters of which will chip or scrape along the bottom of the hole without tracking except for the outer row of teeth of each cutter. It also provides, through the interfitting feature, for self-cleaning teeth. The three cones make a uniform base for distribution of the weight in drilling, reducing bounce and lengthening the cutting life of the individual bit.

When the three-cone bit with interfitting teeth was first used, fixed-bushing type bearings were employed on the cutter shafts. Arrangements of rolling bearings with and without built-in lubricators have also been employed in various stages of development of drilling bits. These efforts proving not entirely successful, in 1935 and 1936, two of the three patents now remaining in suit, F. L. Scott, No. 2011084, 8-13-35, and Scott & Garfield, No.

2030442, 2-11-36, were granted. These patents were combination patents, describing and claiming particular structural arrangements deemed most advantageous in the art of deep drilling, including the use of rolling bearings, both ball and cylindrical. The later of these patents had as its object improvements on the the earlier Scott patent,[4] No. 2,011,084. This patent had as one of its objects, the elimination of the necessity for the use of the special oil lubricator[5] in conical cutters providing, in lieu of the heavy and awkward oil lubricator which, patented to Hughes in 1909, had for many years been considered essential, for the circulation of the drilling fluid about the bearings. Other objects were: the placing of the bearings to take up all of the thrust of the cutter on the shaft and to space the cutters from the shaft; to employ bearings of such size and so positioned and formed that the shaft and cutters would not be materially weakened and so that they would take up all of the wear between the cutters and the shaft; and to provide for an effective construction so that the ball bearings could be inserted without difficulty into position and then retained in place. This arrangement was intended and adapted particularly for use on interfitting conical cutters where the shaft is of the cantilever-beam variety in which there is no way of holding the tip end of the cone to the shaft.

In use, particularly in deep drilling, this type cutter and shaft are subjected to enormous weight and strains.[6] Three sets of rolling bearings are provided in the structure described in this patent and are positioned along the shaft circumferentially where the thrusts are strongest. All three bearings are arranged to take the vertical thrust from the bottom of the hole. Two rings of bearings are on the larger diameter of the shaft, and one ring is nearer the tip of the cone. The middle ring of bearings is designed to support the cone on the shaft and to take up a lateral thrust occurring along the axis of the shaft, as well as help minimize the vertical thrust. The use of three rows of bearings effects a longer bearing life, as the wear on the bearings is more evenly distributed. It also allows reduction in the space required for the bearings, as smaller ones can be used, thus preventing a weakening of either shaft or cone. These bearings space the cutter from the shaft, allowing an area for lubrication by drilling fluid and, as well, keep the cutter from wearing on the shaft.

Scott and Garfield No. 2,030,442, also relates to the use of bearings on cutters for drilling bits, and differs from the foregoing Scott patent in that, cylindrical rolling bearings are employed as well as the ball-type bearings, and in that, design of the shaft differs.[7] The cutter shaft on this

---

[4] Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d 500 at page 508.

[5] This device was the subject of much litigation between Reed and Hughes, Reed v. Hughes Tool Co., 5 Cir., 282 F. 807; Reed Roller Bit Co., 5 Cir., v. Hughes, 12 F.2d 207, in the course of which it was discovered that an oil lubricator was not necessary and that lubrication could be accomplished by the use of the slush water used in drilling.

[6] Two distinct strains are described. First, there is a force in a direction generally in line with the shaft being drilled. This strain varies in degree on the cutter at its tip or small diameter and at its base or large diameter. Second, the other distinct force or strain is parallel to the cutter shaft as there is a tendency to force the cutter upward and outward along its shaft.

[7] The objects of the devices described in these two patents are similar but different in some respects. Plaintiff states the objects of Scott No. 2,011,084 to be: "(1) elimination of lubrication in cutters of the stated character by allowing circulation of flushing fluid about the bearings; (2) providing means to take up all the thrust of the cutter upon the shaft, such means including rolling bearings which space the cutter from the shaft and use such bearings to hold the cutter on the shaft; (3) positioning and forming the bearings so that the shaft and cutters will not be materially weakened and that the rolling bearings will take up the wear in use; and (4) providing for an effective construction so that the ball bearings could be inserted into position without difficulty and then retained in place."

The objects of Garfield and Scott No. 2,030,442 are stated by plaintiff to be: "(1) * * * to provide anti-friction bearings for rolling cutters, which will assure the turning of the cutter on its

device is stepped down at its end, forming a pilot pin for the cutter. Near the base of the shaft there is a circumferential roller bearing so constructed that it will take vertical thrusts but is as well protected against thrusts longitudinally along the shaft. This longitudinal thrust is to be taken by a ring of ball bearings situate further along toward the end of the shaft. Specific defenses put forward to counter the allegation of infringement of Scott and Garfield No. 1,983,316 over and above the claim of misuse are anticipation in the prior art,[8] double patenting so far as claims in suit are concerned, and no infringement.[9]

Defenses claimed against infringement of Scott No. 2,011,084 are invalidity for anticipation in the prior art [10] and no infringement, as well as the general defenses misuse and lack of title. Garfield and Scott patent No. 2,030,442, is attacked as to validity with reference to the prior art, and here some six patents are mentioned by defendants.[11]

Against these citations and the roundly urged contentions of appellants that the patents in suit represent no advance in the oil well drilling art, appellee replies that appellants' complete and faithful reproduction by their own structures of the structures covered by the Hughes patents, rather than following the teachings of the claimed

---

support, so that it will not 'freeze' on its bearing and wear flat at one side and fail to cut. (2). * * * to employ cylindrical bearing rollers to take the bearing thrust transversely of the shaft and a set of ball bearings to take the thrust longitudinally of the shaft; (3) * * * to employ the ball bearings to retain the cutter on its shaft and to be enabled to insert such bearings through the shaft into the ball raceway after the cutter is in position thereon; (4). * * * to so mount the roller bearings that there may be longitudinal play between the cutter and shaft without the thrust resulting therefrom being taken upon the rollers; (5) * * * to provide a loose fit between the cutter and the shaft so that the well fluid may circulate about the shaft and bearings and assist in the lubrication thereof."

8 Anticipation and double patenting is urged on the basis of an earlier patent to Scott, assignor of Hughes, No. 1480014 issued in 1924, and relating to a self cleaning roller drill with interfitting cutter. In addition to the fact that an analysis of this patent indicates that it was meant only for bit heads having two conical cutters or multiples of two, it is quite clear that it did not anticipate and that there was no double patenting. It is then urged that this earlier patent, in view of another issued to Scott and Wellensieck, assignors of Hughes No. 1647753, concerning the shaping and spacing of teeth on the cutters, or both of the foregoing patents in view of a much earlier Hughes patent, No. 959540 relating to three cone cutters, constitute complete anticipation. For reasons which will be later stated, it is quite clear that neither of these patents anticipate.

9 This argument deals with manufacturing process, the accused structure being cast in a single piece, while the Hughes structure comes in three pieces and is welded into a single piece. The patent in suit is not primarily on a process of manufacture but rather concerns the device itself.

10 Five patents or combinations of patents are urged by defendant in attempt to prove invalidity for anticipation. The first, Pickin No. 1,302,967, was the invention of a core bit in which ball and cylindrical roller bearings were used in ring cutters. The cutters were of a different type and were mounted differently from the cutters in the Scott patent. Hughes No. 959,539 also urged by the defendant, employed one roller ball in a frusto conical cutter. Another, Fletcher Patent No. 1,918,902 is referred to. That patent used one circumferential ring of large ball bearings with one ball bearing at the point of the shaft. In place of the circumferential ring of ball bearings, that patent provided an option of using cylindrical rollers. Mendenhall No. 321,516, also alluded to, dealt with car-wheel bearings on railroad cars; and French, Maire No. 435,364 referred to by defendants, dealt with car-wheel bearings on motor vehicles.

11 The patents by which appellant claims anticipation are Pickin, Hughes and Fletcher, referred to in Footnote 10; and, as well, Scott patent No. 2,011,084, also in suit, hereinbefore described; further, Harrington patent No. 2,000,076, and Behnke patent No. 1,972,256, are referred to by defendant. These latter two patents are in many respects similar to the patent in suit. But plaintiff has completely offset the similarity by proving prior invention and use.

anticipating patents, speaks so strongly to the contrary that it is difficult for appellants to make their contentions, that the patents brought no advance in the art, heard over that loud speaking. They point, too: to the testimony of drillers as to the great advantages obtained, especially in deep drilling and in hard formations, by using the Hughes structures and following the teaching of the Hughes patents; to the completely wide spread use in the industry; to the public acquiescence in and acceptance of the Hughes patent structures; and to the uniform judicial approval of these patents whenever they have been individually brought into controversy.

As to Scott, No. 2011084 and Garfield & Scott, 2030442, they point to the carefully considered opinion of the tenth Circuit Court of Appeals in Williams Iron Works v. Hughes Tool Co., 10 Cir., 109 F.2d 500, 508; in which these patents were examined, and except as to claims 7 and 8 of the Scott patent, were sustained over Fletcher, Hughes and Pickin, mainly relied on here as anticipation.

Finally, pointing to the fact that these are combination patents, that the improved structures made and used under their teachings have greatly contributed to eliminate undue delays and to reduce expenses in drilling, especially in deep wells, they insist that a deliberate infringer seeking to overthrow them must show something more than has been shown here, and that by all the established and accepted tests of the validity of such patents, they are valid. We agree.

As to Scott and Garfield, the three cone bit patent, there is no gainsaying that though three cone non interfitting patents had been known for years, but had not been used, Scott & Garfield were the first to discover and develop an interfitting workable three cone bit, that it filled a long felt want and in a very short space of time became Hughes' most used and biggest seller.

The patents cited as prior art anticipations except Scott 1,480,014 & Hughes 949,-

540 were all considered in the patent office. In urging the patentability of claims 1, 2, and 3, in their application, Scott and Garfield's attorney clearly stated the problem solved in their application. This was that the arrangement of three conical cutters with the teeth interfitting and with rows of teeth arranged so that each row will cut a different track on the bottom of the hole and also leave sufficient support for the cutters so that they will withstand heavy duty. By making the teeth interfit, the cutter shells may be made larger and the shaft may be strong enough. No one claims that any single prior art structure showed this invention.

It will not do, as appellant tries to do, to cull from one and another of the prior patents elements of the combinations in suit. They must show not that some of the elements are present in the prior patents but that the combination is. The evidence as a whole is not sufficient to overcome the presumption attending their granting.

When it comes to the later patents dealing with the mounting of cutters on a bit head, we find in Williams Iron Works v. Hughes Tool Co., supra, full support for appellee's view, that the claims of these patents in suit are valid. There the court set down clearly and correctly the general rules governing the construction of combination patents. There is pointed out as to the first patent, "Scott made a very substantial contribution toward the development of a shaft with antifriction bearings for bit cutters which would operate without lubrication", and as to this patent and the later one to Garfield and Scott; "Scott and Garfield and Scott succeeded where others failed. Scott conceived a new combination of old elements whereby a new and useful result is obtained. Garfield and Scott conceived a new combination of old elements whereby an old result is obtained in a more facile, economical, and efficient way then in any prior conception or device." There, summing up in their favor,[12] the court sustained claim 6 of the first Scott patent, a

[12] "Rotary drills embodying the conceptions of the patents in suit have completely superseded the older drills and greatly increased the use of the rotary

similar claim to claims 1, 2, and 3 in suit here, and all of the claims of the Garfield and Scott patent.

■ In view of the thoughtful and carefully reasoned nature of that opinion, we conclude that in a suit by one who sets out to infringe by deliberately copying the patented structures of another, comity requires us to follow rather than to reject the opinion of another circuit court of appeals of long and unchallenged standing, especially when the patents have stood without successful challenge for nearly the allotted span of their lives. Cf. Novadel-Agene Corp. v. Tex-O-Kan, 10 Cir., 119 F.2d 764.

■ In addition, when we consider as to the three patents in suit; their great usefulness to, their uniform use in deep drilling where they operate thousands of feet underground; that they have stood without successful challenge for nearly the allotted span of their lives; and that it is very easy after a discovery to determine that the discovery was obvious, we are of the firm opinion that the presumption following the grant of the patent, aided as it is by long public acceptance and use and the opinion of plaintiff's expert, and supported by judicial approval, far outweighs the opinion of defendant's expert that because some of the elements of these combination patents are well known, the patents show no novelty and the combinations they represent are anticipated.

■ We think this takes too narrow a view of the applicable patent law. A combination is patentable though each of its constituent elements was well known in the prior art, if the combination produces a new and useful result and not merely the aggregate of several old results or if it pro-duces an old result in a cheaper or otherwise more advantageous way. 40 Am.Jur., Sec. 19, p. 543. It is true that the combination must represent something more than the ordinary skill of the average mechanic, but, speaking prosaically rather than poetically, it is not true, as is sometimes claimed, that patents to be valid must be the result of, must embody, flashes of genius.

The quotation from Hotchkiss v. Greenwood, 11 How. 248, 13 L.Ed. 683, commonly relied on: "* * * for unless more ingenuity and skill in applying the old method of fastening the shank and the knob were required in the application of it to the clay or porcelain knob than were possessed by an ordinary mechanic acquainted with the business, there was an absence of that degree of skill and ingenuity which constitute essential elements of every invention. In other words, the improvement is the work of the skillful mechanic, not that of the inventor." [13] does not mean this. The "any person who has invented or discovered" etc. of Revised Statute, Sec. 4886, 35 U.S.C.A. § 31, is intended to mean something more than the mere display "by an ordinary mechanic" of mechanical aptitude.

■ It means no more, though, than that when confronted with a combination producing a materially different or more advantageous result, one must examine the particular change made in the light of the art at the time the device was developed to determine whether inventive skill produced the change or whether only mechanical aptitude was responsible.

In two recent articles in the American Bar Journal, written from opposite standpoints, under the title "Meaning of Infringement in Patent Law", American Bar

---

drill. * * * Each patent marked a distinct step forward, increasing the efficiency, the speed, and the wearing life of the drills. Each constitutes a new combination of old elements whereby a new and useful result is obtained or whereby an old result is obtained in a more facile, economical, and efficient way than in any prior conception or device. The discovery and reduction to practice of these novel combinations required greater skill and higher thought than would be expected of an ordinary me-chanic trained in the art, and resulted from the exercise of inventive genius." Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d at page 512.

[13] See also Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 62 S.Ct. 37, 86 L.Ed. 58; Textile Machine Works v. Hirsch Textile Machines, Inc., 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382; and Mantle Lamp Co. v. Aluminum Products. Co., 301 U.S. 544, 57 S.Ct. 837, 81 L. Ed. 1277.

Association Journal, April, 1949, June, 1949, the changes are rung by the one side and the other on the weal and woe the courts have wrought in patent law by the attempted application of this rule. It will serve no useful purpose for us to add our voice to the swelling chorus from each side. It is sufficient to agree that sometimes the rule has been overdone, sometimes underdone, sometimes the patent grant has been given too much weight, sometimes too little, and that with a test as subjective as this one is, perhaps nobody will, or can be ever satisfied.

"Judges who have tried many patent cases, who have heard the testimony of experts, the one affirming the matter to be merely an advance in mechanical steps, the other to be invention of the highest order; the one affirming prior use, the other denying it; the one affirming it to be the flight of genius into new fields, the other, the mere dull trudging of an artisan, know that for a just decision of such causes no objective criteria can be relied on. They well know that there must be in the trier something of the same imaginative response to an idea, something of that same flash of genius that there is in the inventor, which all great patent judges have had, that in-

tuitive brilliance of the imagination, that luminous quality of the mind, that can give back, where there is invention, an answering flash for flash."[14] We think the district judge was this kind of trier. In his brief opinion, concluding: "This is a simple patent and may be understood without expert testimony. Of the two experts used, the plaintiff's is the most creditable." he gave sound reasons for sustaining the patents.

A reading of the brief but clear and convincing testimony of plaintiff's expert Payne in connection with the record as a whole, leaves us in no doubt that, though by 1927 this was a crowded art, the patents in suit contributed very materially to deep rotary drilling. Such contributions when made in a crowded art are highly indicative of invention.[15] The testimony of Payne,[16] at Record 47-48 is most interesting and informative. It is notable, too, that these patents have run the whole of their lives without having been successfully contested. We are of the opinion that in view of the great difficulties and hazards attending rotary drilling at great depths, in view of the complete acceptance of these tools by everyone in the art, including defendants, in view of the fact that the three un-

---

[14] "Function of the 'Hunch' in Judicial Decision", Judgment Intuitive, Foundation Press, Inc., 1938.

[15] Greenwald Bros. v. Enochs, 3 Cir., 183 F. 583.

[16] "Well, it is a pretty difficult problem to design a bearing for a cantilever type beam or shaft, and particularly one that is inclined. This one, for instance, used on these Hughs bits, is inclined downward, you have to have a large bearing shaft, since it is not supported at both ends, you must have the strength in that cantilever, which is supported only at one end, so that it will not only withstand its normal drilling loads, but also the high shock loads, which add greatly to the loads imparted to the bearing shaft. Having obtained the strength in the shaft, then it is a problem of arranging your bearings in the most efficient manner, so that those bearings will not, of themselves, require a lot of space because space is at a premium in this bit. You have to utilize every bit of the ingenuity that you can, in the way of heat treatment and design, to obtain the relatively long teeth re-

quired, the thickness of the cutter shell required, the size of the bearings, to give you a commercial operating bit, and the size of the shaft that is required to—in which the bearing will, in most every case, have a life sufficient to dull the teeth, and obtain all the useful life of the teeth, without having to come out of the hole."

"Due to the fact, that it is a cantilever beam, your loads are entirely different from what they would be if it was on a horizontal shaft. The load comes from above, applied through drill collar, or drill pipe, parallel with the axis of that bit, and that follows, as two components, one at right angles to the bearing shaft, and the other is lengthwise, or parallel to the axis of that shaft, that you have both loads, you have the lengthwise of the shaft loads, or thrust loads, parallel to the axis of the shaft, and, you also have the transverse loads at right angles of that shaft, and those loads are carried by those three rows of rolling bearings."

expired patents have, one of them only two years more to run, the other two, three and four, respectively the judgment of the district court sustaining their validity as against defendants for the time they have still to run was right, and it ought to be affirmed.

It is now ordered and adjudged by this Court that the Fletcher patent 1,856,627 having expired pending the appeal, the issues as to it have become moot, the judgment of the District Court is reversed and the complaint dismissed as to it; otherwise, the judgment is affirmed.

SIBLEY, Circuit Judge, (dissenting in part).

The present Hughes Tool Company, and its predecessors of the same name, have for about forty years enjoyed a virtual monopoly in the west in the manufacture and sale of rotary bits for drilling oil and gas wells, maintained by a series of patents, obtained or bought, on such equipment. Most of the patents have expired and only the last four were involved in this suit. Pending appeal the earliest of the four issued to Fletcher as No. 1,856,627 expired, and in oral argument it was dropped from the contention since there was no award of damages for infringement. Nothing need be said about it. The next, issued to Scott and Garfield as No. 1,983,316, and referred to as the Three Cone Bit, was issued Dec. 4, 1934, and still has a life of more than two years. It is the bit which the defendants copied. Though a combination patent of old elements I agree that the combination advanced the drilling art, and was patentable and the relief as to it was properly granted.

The next patent, issued to Scott as No. 2,011,084 on Aug. 13, 1935, is for "rolling bearings" as a mounting for the rotating cones used in the drill heads. Some of the claims speak of "rolling bearings" which might include both balls and rollers in the bearings, but other claims speak only of balls, and the drawings show only balls, and rollers could not be used for the taking of the horizontal thrust or to keep the cones on the spindle. Only the claims for ball bearings are supported by the disclosure.

Ball bearings to do away with friction and to minimize the necessity for lubrication are very old. Judge Wilson found novelty in the apparently ingenious method of introducing through a hole the circle of balls intended to hold the cones on the shaft, without a nut; Hughes Tool Co. v. United Machine Co., D.C., 35 F.Supp. 879. But the Tenth Circuit, Williams Iron Works v. Hughes Tool Co., 109 F.2d 500, Headnote 15, page 511, held claims 7 and 8 based on this feature involved no invention. The old patent to Mendenhall, No. 31,516, showed precisely this use of balls, inserted through a hole which was afterwards plugged up, for the purpose of holding a wheel on an axle. Other patents in the well drilling art had taught the use of ball bearings to eliminate lubrication. If there was any invention it covers only the exact combination shown. This patent was not successful, the making of drill heads embodying it was soon discontinued, and there is no proof that the defendants here ever made such. The patent is not really involved in this case.

The final patent to Garfield and Scott, No. 2,030,442, issued Feb. 11, 1936, according to which the bearings of conical drill heads are now made, is critical and has four years to run. I most earnestly insist that it, and especially the claims put in issue, are invalid in view of the prior art and of general mechanical skill when conception of it is claimed. It is an improvement on the Ball Bearing Patent above discussed, overcoming weakness therein, according to Williams Iron Works Co. v. Hughes Tool Co., supra, 109 F.2d at page 508. What the weakness was is not there stated, nor explained in this record. I think it is inferable from well known facts. Balls must be very hard and consequently brittle. Under heavy pressure, passing in succession from ball to ball, two mere points on opposite sides of the ball must sustain the entire pressure, and the ball may crush or deface its raceway. In a roller bearing, where a cylinder of any desired length replaces the ball, instead of a single point sustaining the pressure, it is distributed along a line of the roller whose ability to withstand it may be fifty or a hundred times that

of a ball. Roller bearings are therefore much superior to balls to sustain pressure transverse to their length and to the axle, but cannot sustain any pressure parallel thereto, even if in a raceway, for the roller ends will be chewed off. Neither is a roller bearing available to hold the wheel on the axle or spindle. This has been common mechanical knowledge for a long time. In the first decade of this century all the automobile catalogues described their bearings. The rear wheels were firmly fastened to the rear axles, the thrust parallel to the axle being taken care of by the fixed wheel at one end and the gear wheel at the other. The heavy thrust was downward, transverse of the axle, and it was borne by a frictionless roller bearing. The front wheels turned on a short spindle, (like the cones in this case), and side thrusts occurred in turning the car from side to side, or on ground slanting sidewise. To care for this and to hold the wheel on the spindle, ball bearings were used. The differing usefulness of the two kinds of bearings was recognized in the Mendenhall patent, granted in 1885, where a car wheel turning on its axle and bearing a very heavy weight, was fitted with double roller bearings to carry the weight, and a ball bearing running in a raceway was used to take the side thrusts and keep the wheel on the axle. There was even a hole to put the balls into the raceway, without the use of a nut, the hole to be afterwards plugged up. These functions are all clearly taught in the Mendenhall disclosure. Now in this case the cones are wheels running around in a small circle on short spindles. At first there were plain bushed bearings, but as drill stems became longer and heavier, frictionless ball bearings were put in by patent No. 2,011,084. The evidence is that by far the greater part of the weight rests upon the outer edge of the cones. When the balls there proved insufficient, rollers were substituted. A ring of balls was left to take side thrusts and to hold the cone on the spindle. I see only mechanical skill in that. The method of putting the balls in the raceway without a nut, is as old as Mendenhall. Mendenhall used a combination of rollers, balls, and hole to put them in precisely for

the same purposes that Garfield and Scott did. Moreover, in the drilling art in the patent to Pickin, No. 1,302,967, May 6, 1919, for a Roller Drill we find the same combination of rollers and balls to mount the rotating cutting members. Fletcher and Kuldell, No. 1,918,902, applied for Sept. 12, 1931, and granted July 18, 1933, shows in a conical cutter the combination of rollers and balls.

Passing by several patents which show a similar combination, I come to the Three Cones Bit patent above mentioned which we are sustaining. The application was filed April 17, 1932. The drawing (Record p. 324) shows with perfect clarity the exact combination of rollers and balls and the plugged hole to put the balls through. The claims, however, do not assert anything patented as to the bearings. But the disclosure, in lines 50 to 60 of the first page says: "We have shown the shaft as recessed adjacent to the head to form a raceway 5, for a row of roller bearings 6. The shaft also has an annular groove to receive the ball bearings which serve to hold the cutter on the shaft. These balls are inserted through a channel through the shaft, said channel being then plugged by a cylindrical plug." This exactly describes the combination under discussion. On this disclosure as consideration the Three Cone Bit patent was granted. Now on October 28, 1933, the application was filed to patent this very combination and not only in respect of Hughes Three Cone Bit, but all "roller cutters in deep well drills." The applicants apparently did not on April 17, 1933, think the bearing combination patentable. It does not seem right to me to go back six months later and apply for another and later patent on part of what was previously disclosed.

But at last the claims here held valid and infringed are certainly too broad. Typical are claims 12, 13, and 14. "12. A cup-shaped roller cutter (i. e. any sort of cone-like cutter) having an internal roller raceway adjacent to its rim, and an internal ball raceway adjacent to its bottom." "14. A roller cutter bearing having an external roller raceway and an external ball raceway between said roller raceway and the end

of said bearing." Anybody would infringe these claims who, on any kind of a bit having one 'or many cutters, used a bearing which combined rollers and balls. Other more descriptive claims, such as 6, are nearly as broad. It seems preposterous to me to extend the monopoly of Hughes for several more years on this unpatentable combination. As to this patent I strongly dissent.