### PORTER–CABLE MACHINE CO. v. KNIVES & SAWS, Inc.

No. 10686.

United States Court of Appeals
Seventh Circuit.

May 5, 1953.

Rehearing Denied May 28, 1953.

Norman H. Gerlach, Chicago, Ill., Robert W. Fulwider, Los Angeles, Cal., for appellant.

Bernard A. Schroeder, Bradford Wiles and Schroeder, Merriam, Hofgren & Brady, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff's suit for infringement of Claims 1, 5, 6, 8 and 14 of patent to Heckroth, No. 2,023,588, issued December 10, 1935 upon application filed June 24, 1933, having resulted in a decree adjudging the claims valid and infringed by defendant, the latter prosecutes this appeal, attacking each of the two findings.

In his application Heckroth admitted that machines for polishing waxed floors are old but pointed out that, in most instances, they employed a simple circular brush rotated by an electric motor; that such a device has certain innate defects in that the gearing is noisy and the mechanism vibrates to an excessive if not prohibitive degree. Its action, he said, becomes more inefficient, as the wear of the brush increases, and the rotation of the brush about its center axis renders control difficult as it tends to drive the machine in a particular direction. In other forms of prior art, he said, the brush employs reciprocating motion, that is, it moves to and fro in the same direction. Such machines have proved unsatisfactory because of increased noise and vibration as the toggle joints wear.

It was his asserted purpose to provide a polishing machine free from these difficulties, economical to manufacture, which will produce a more uniform finish on grained surfaces than can be obtained by prior art machines. He proposed to accomplish this purpose by a polishing tool which, by a crank, is given motion such that each point of the tool moves in its own independent closed path, giving the brush "circular translatory motion", and enumerated the details by means of which such a result is made certain. He asserted as advantages that the rear of the brush is equalized; that rocking and bumping of the machine during operation are eliminated; and that a more uniform finish is obtained, because all portions of his tool act identically on the treated surface. He said further that he did not limit himself, except to the extent of the disclosure of the claims.

Of the claims sued on, Claim 14, it seems to be agreed by both parties, is the broadest. It reads "In a surface treating machine a frame, a motor carried thereby, a crank rotatable by the motor, a tool operably pivotably connected to the crank, and means on the frame cooperating with means on the tool to confine the motion of the tool to a translatory closed path." Thus there are in this claim for a portable surface-working machine, (a) a frame, (b) a motor carried thereby, (c) a crank rotatable by the motor, (d) a substantially circular tool operatively connected to the crank by a pivotal connection and (e) means on the frame cooperating with means on the tool to confine the motion of this tool to a "translatory closed path." It was element (e) upon which the trial court grounded its finding of invention, and it is this element, added to and combined with old elements, which plaintiff contends justified the court's judgment and which the defendant insists did not amount to invention, and which, if the patentee did achieve invention, defendant did not employ in its device.

After finding that all prior art devices employing simple rotating movement or reciprocating movement were defective, as the patentee averred in his application, the trial court found that "Translatory movement of a tool in a closed path has important advantages. If the tool has cutting grits on its surface, each lateral face of each grit is presented to the front of the direction of travel at some point in its orbital movement. The independent paths cross and recross each other. This increases the efficiency of sandpaper by over 50% as compared to reciprocating or rotary movements. The centrifugal force of the movement also helps to make the tool self-cleaning, and the crossing and recrossing of the orbits at various points on the tool produces a more uniform finish on the work and wear on the tool is equalized." The court added that "Although translatory movement of a tool in a closed path has long been obtained manually, as in scrubbing floors, washing windows, polishing automobiles, and the like, Heckroth was the first to provide this advantageous movement in a power-driven portable machine. He accomplished it by driving the pad with a single crank on the lower end of the motor shaft, and providing a confining means which prevents rotation and confines the tool to orbital movement."

The court found that there had been a long-felt want for a floor polishing machine providing the "translatory movement in a closed path" which Heckroth prescribed and that machines of this type have proved successful. It found also that "The accused machine closely follows the teachings of the patent, although rubber posts are substituted for the patentee's links which support the weight of the machine on the tool and confine the motion of the tool to a translatory closed path. The accused machine is for the same purpose as the patentee's and has the orbital motion which Heckroth was the first to disclose in a portable polishing machine." It added that every point on the tool of the accused device moves in its own independent closed path and that the paths are substantially circular, crossing and recrossing each other so that wear on the tool is equalized and a uniform finish produced and that, though defendant's device works with some slight deviation from a true circle, in its operation each deviation is "barely perceptible" and the movement so nearly circular that the accused tool substantially embodies the patentee's mode of operation and obtains the same result in the same way as did he.

It is apparent that the finding of validity depends almost entirely, if not quite so, on the inclusion of element (e) of Claim 14 described above, that is, "translatory movement of the polishing member in a closed path." The term is the patentee's own definition. It consists of motion in which all points of the moving body have at any instant the same velocity and direction of motion. Webster's International Dictionary. The Oxford Dictionary defines it as motion such as causes all parts to follow the same direction. Defendant has no quarrel with this definition but insists that this means that the circular "orbits of all of the points in the body are identical." The term's simplest illustration is the manual scrubbing of floors and washing windows. Plaintiff claims and the court found that Heckroth was the first to provide this old advantageous movement in a power driven portable device, which he asserted overcame the difficulties of all the prior machine art and resulted in valuable utility.

The court heard expert witnesses, viewed demonstrations and concluded that this element was new in Heckroth's combination; that he achieved valuable advantages over the prior art, resulting in invention, and that defendant infringes. In view of this state of the record, of course, we can not set aside the finding of validity unless it is clearly erroneous, Graver Tank Co. v. Linde Air Products Co., 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672, or unless we can say, as a matter of law, that, on the admitted facts, the standard of patentable invention required by the statute of the United States has not been met. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S. Ct. 127, 95 L.Ed. 162. In view of the state of the record and the opportunity of the

District Court to view demonstrations, which we do not have, we think our decisions in General Time Corp. v. Hansen Mfg. Co., 7 Cir., 199 F.2d 259 and Sales Affiliates v. National Mineral Co., 7 Cir., 172 F.2d 608, are inapplicable here.

Whether what Heckroth did was patentable depends largely upon the prior art in evidence. It is obvious that the patent office gave careful consideration to Heckroth's application; it considered five of the patents now relied upon by defendant and distinguished them. The District Court itself aptly commented that the suit was very nearly a retrial of what occurred in the patent office. Defendant discusses at some length the patent to Drennon 1,741,145. Despite its insistence that it employs Drennon's structure, we think it clear that this device operated only with a straight reciprocating movement. The machine was sold commercially, but apparently was not successful, as many complaints about its vibration were received. Gillis 1,748,548 employed a rotary motion but no translatory movement. Buzzell 233,067, in his device for finishing boots and shoes, disclosed only a point on the tool directly below the center of the crank moving in a circle; all other points on the tool form produced modified ovals or ellipses of variant sizes. Buzzell did not prescribe or employ translatory movement in a closed path. Schultz 1,622,166 admittedly does not produce translatory motion; the points do not move in the same direction. Thus one point on the tool makes a circle, some points make figure eights, others travel in clockwise paths and still others in counterclockwise paths. British patent to Cutler 14,356 employs a series of brushes mounted on a crossbar by means of two parallel cranks to produce circular translatory motion in a relatively large device designed for cleaning rugs. The machine is not portable; it does not have a crank pivotally connecting the brush to a motor, or "means cooperating with the brush and frame to confine the motion of the brush" and the weight is not carried by the brush. Dobson, in 614,797, made a dough-working machine. Not only is this obviously nonanalogous art, Cardox Corp. v. Armstrong Coalbreak Co., 7 Cir., 194 F.

2d 376, 379, but it fails to prescribe motion such as that utilized by Heckroth.

Tucker 299,183 was presented to the court in an application for a new trial as newly discovered art. The court, evidently believing that the reference did not anticipate Heckroth, declined to reopen the case. The patent covers a machine for cutting or trimming gelatin capsules. It employs "a series of pins on which the capsules are formed, set in a flat plate, and a corresponding series of small circular cutters which rotate on the ends of fixed arms or stems." The molds are carried around the cutters and thereby the capsules are cut. Defendant suggests that if Tucker's drawing be turned upside down and if the parts of the environmental apparatus, that is, the long posts, which would then extend downwardly, be removed, and the cross head and cutter mounted thereon, there would be left a frame and movement bearing "quite a striking resemblance to Figure 1 of the Heckroth drawing." But even if such distortion should be made, we fail to see anything in the patent that would teach Heckroth to do what he did. There is no means for holding the tool and the frame together, which is necessary in a surface working machine; there is no motor and no arrangement of the parts to put the weight of the machine on the tool. Yutzler 1,675,078 employed a simple rotary movement.

After considering this prior art, the testimony of the expert witnesses and the demonstrations in open court, the court found that the claims achieved invention over each and every one of the prior patents. We have not had the benefit of the demonstrations, but our examination of the testimony and of the documentary evidence, confirms the soundness of the court's finding that Heckroth achieved invention over the prior art, and, in view of all the evidence, complied with the standards of patentable invention prescribed by the statute. Obviously he was not the first to provide translatory motion in a closed path, for this is one of the old expedients of handwork, but we think the court was fully justified in finding that he was the first to discover the desirability of employing such motion in polishing machines and taught the art for

the first time how it could be provided in a relatively simple device.

The tool found to infringe employs all of the elements of Heckroth previously mentioned unless it be element (e),—translatory movement in a closed path. The District Court found, as we have seen, that defendant's device in operation employs substantially circular movement embodying the patentee's mode of operation and obtains the same result in the same way as obtained by Heckroth. Even though rubber posts are substituted for the patentee's links, which support the weight, they confine the motion of the tool to translatory closed paths and even though, as the court said, the accused machine employs an eccentric, which is the admitted equivalent of a crank and produces the identical motion of a crank, the same result is achieved.

Defendant insists strenuously that it does not produce the circular translatory movement of Claim 1 or the translatory motion in closed paths of the other claims in suit. Again we observe that though we have not seen the demonstrations submitted to the trial court, our examination of the testimony, the documentary evidence and the physical exhibits leads us to conclude that, by its flexible rubber posts or supports, defendant substituted a mechanical equivalent for the post links and the other method prescribed by the patentee, and that in operation exactly the same result obtains; the same translatory movement in a closed path, the same circular translatory movement. The court's finding of infringement is not clearly erroneous but, rather, is supported by adequate substantial evidence.

Defendant urges estoppel by the file wrapper history of Heckroth's patent. The District Court found that there was nothing in the wrapper to support defendant's contention in this respect. The evidence does tend to show that the attorney representing the applicant encountered difficulty in satisfactorily describing Heckroth's prescribed novel movement in a portable machine. This movement defendant now refers to as orbital motion, although that word does not appear in the patent or in the file wrapper. It is obvious that, from the beginning, Heckroth was trying to distinguish his concept from the simple circular motion and the straight line reciprocal motion of the prior art devices. He originally used the confusing term "circular reciprocal motion", and the examiner asked him to define this term. After an interview, he changed his language to "translatory motion." Thereupon the examiner commented that translatory motion in a closed path or a circular translatory motion was "assumed to mean a motion whereby each portion of the tool describes a circle about an axis different from every other point, or movement in a closed path about an individual axis." This construction of the patent office is in accord with the construction of the District Court and the teaching of the patent. We agree that there is nothing in the file wrapper constituting an estoppel against plaintiff.

We consider it unnecessary to discuss the court's finding of long-felt want and success attained. The essential issues, we think, we have fully considered. Accordingly the judgment is

Affirmed.