JEOFFROY MFG., Inc. et al. v. GRAHAM et al.

No. 14227.

United States Court of Appeals Fifth Circuit.

Sept. 9, 1953.

Rehearing Denied Oct. 7, 1953.

S. Tom Morris, Amarillo, Tex. (Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., of counsel), for appellants.

Claude A. Fishburn, Kansas City, Mo., Clayton Heare, Amarillo, Tex., and Orville O. Gold, Kansas City, Mo., for appellees.

Before HOLMES, BORAH and RIVES, Circuit Judges.

RIVES, Circuit Judge.

This appeal is from a judgment holding valid and infringed Claims 1, 2, 4, 5, 6, 7 and 8 of Letters Patent No. 2,493,811, issued to William T. Graham on January 10, 1950, for a "Vibrating Plow and Mounting Therefor".[1] Graham is the owner and Graham-Hoeme Plow Co., Inc. the licensee of the patent.

The principal issues involved are validity and infringement of the Graham patent, though appellants, as manufacturers of the accused device, incidentally raise questions as to the capacity or interest of the corporate appellee, Graham-Hoeme Plow Co., Inc. to bring the suit and the lack of willfulness in infringement, in the event appellee should prevail on the latter issue. On the initial question of validity, the specific defenses urged are that the Graham Patent is invalid because (1) it is anticipated by the prior art; (2) it discloses no patentable novelty or invention; and (3) assuming that invention does exist therein, William T. Graham was not the original inventor thereof, but copied the idea and structure from certain parties at Valley City, North Dakota, thereafter claiming them as his own; and (4) the claims of the patent are vague and indefinite and much broader than the specifications and any invention thereby disclosed.

The patent in suit embraces a spring clamp mechanism which permits resilient mounting of the shank of a ground working tool to the lower flange of the H-beam of a plow frame. The plow upon which the patented spring clamp is used includes a number of laterally spaced ground working tools which break the soil in such manner as to conserve moisture and minimize soil erosion. The spring clamp mechanism peculiarly adapts the plow for use in the rocky territory of North and South Dakota, Montana, Wyoming and other nearby states. In those areas, when the point of the ground tool strikes a rock beneath the surface, the spring mechanism permits the tool to rise up and over the obstruction, after which it forces the tool back into plowing position.

The patented device may be more particularly described as exhibiting a bracket, secured to the lower flange of the H-beam of a plow frame, with a fulcrum plate pivoted to the bracket and the forward end of the ground tool shank resiliently and frictionally held between. The front end of

1. The suit as originally filed involved both this patent and another patent for a "Brace Clamp", also issued to and owned by appellee Graham, which latter patent has been invalidated this date for lack of invention in Graham and Graham-Hoeme Plow Co., Inc., v. Jeoffroy Mfg., Inc., 5 Cir., 206 F.2d 769.

the shank has an opening through which a rod or bolt extends, and a coil spring around the rod is seated on the upper part of the bracket and held in place by a washer and nut. When a rearward and upward force is exerted on the ground working tool during operation, the forward end of the tool shank moves downward against the tension of the coil spring and rocks, or pivots, with the fulcrum plate of the clamp mechanism so as to enable the tool to pass over an obstruction, as well as to add further resiliency to the natural resiliency of the shank.[2]

Since about 1937 both parties to this controversy or their predecessors have manufactured and sold a basic type chisel plow of "H" or "I" beam frame construction with curved spring steel shanks attached to the frame by various clamping means. When the old type Graham plow was used in the rocky northern and northwestern states, rocks buried in the soil had caused extensive breakage and bending of parts and the need for some effective spring trip mechanism to remedy this difficulty for each shank of the plow became apparent.[3] The patentee, Graham, first conceived the idea of providing the shanks of his plows with some type of spring

mounting about 1940, though, as the District Court found, he did not mature his final conception or make any models of such a device until early 1946, when the need for such became urgent. Shortly afterwards he began commercial development of the spring clamp mechanism disclosed by the patent, and by early 1947 had furnished the Graham-Hoeme dealers and customers such devices for use on their plows.

In the spring of 1946, when difficulty was experienced with the old type Graham chisel plow near Valley City, North Dakota, certain local farmers constructed a device of their own to remedy the problem, a model of which is before the Court bearing the designation, "Valley City Device".[4] Three witnesses testified that this device was made about March 20th or 21st, 1946, while another witness stated it was built on March 26, 1946. The District Court credited the testimony as to the latter date, and further found that the patentee, Graham knew the general description of the Valley City device in the latter part of March, 1946, at about the time his employee, Shelton, was instructed to make a drawing of his own spring clamp device, which antedates in structure the device of

2. The patent claims refer to this pumping action of the ground tool, though it is not set forth as a structural element of the claims.

3. From the record in the companion appeal, Graham and Graham-Hoeme Plow Co., Inc. v. Jeoffroy Mfg. Inc., decided this date, 206 F.2d 769, it appears that when the problem of breakage and bending of the plows arose, numerous dealers and farmers wrote letters suggesting some kind of "spring trip" to relieve the difficulty, though none of them suggested the structure embodied in the Graham patent.

4. The witnesses Elmer Helfeld, Trautmann, Nelson, Ulmen, and Richter described the construction of the Valley City device substantially as follows: A regular Graham clamp was cut through the center with a torch, the center portion being removed to permit the plow shank to move vertically. A section of wrist pin was welded to each of the rear portions of the clamp and another section of wrist pin was welded to the top of the shank. The three wrist pin

sections were then aligned and a pin or bolt inserted through them to provide a hinge or pivot for the shank. A plate was welded to the top flange of the H-beam with a portion of the plate extending forward of the H-beam for a coil spring to seat upon. A hole was cut in the forward end of the shank and in the forward end of the plate on top of the H-beam. A short length of eye-bolt was inserted through the hole in the shank and fixed in position by a nut underneath the shank. The eye of the short bolt was linked with the eye of a longer bolt which was inserted through the hole in the plate on top of the H-beam. A coil spring was placed over the long portion of the eye-bolt and a washer and nut placed in position on top of the eye-bolt to hold the spring in position. Set screws or bolts were run through the two sides of the clamp to hold the clamp in position on the beam. The details of construction of the Valley City device are best illustrated by the colored drawings of the witness, Elmer Helfeld, which are before the Court as exhibits.

the patent in suit.[5] However, the Court held that the Valley City device did not contribute anything material to the conception of the Graham patent, and therefore did not constitute anticipation thereof. The Court concluded that patentable novelty and invention existed in the "double fulcrum and other novel parts of the fulcrum assembly disclosed in the Graham patent",[6] and that appellants failed to show "any prior public use or anticipation of the invention in the said patent."

Appellants attack the Court's conclusion that the Valley City device did not anticipate the Graham patent as clearly erroneous, insisting that no inventive skill is disclosed in the Graham device and that, being merely a mechanical refinement or manufacturer's modification of the original Valley City structure, it cannot constitute invention. Though appellees contend that the evidence does not support appellants' contention and the Court's finding that Graham was acquainted with the structural details of the Valley City device when he conceived the idea of the Graham patent, they argue that, in any event, the Court was clearly correct in holding that it did not contribute anything material to the conception of the structure embodied in Graham.

Appellants' expert witness, Fishleigh, admitted in his testimony and appellants concede in brief that the claims of the Graham patent may not be read literally on the Valley City device, and that the Graham structure exhibits differences in structure over that device and the prior art.[7] It further appears that the Valley City device was simply a crude, handmade

---

5. A further and final drawing of the Graham patented structure was apparently made by another Graham employee, Mr. O. S. Kelly, on April 3, 1946, and the device actually constructed sometime around the middle of April, 1946. This device is also before the Court, and discloses the complete idea of the Graham spring clamp patent.

6. The District Court, in its letter opinion to counsel for the respective parties of April 12, 1952, clarified its findings of novelty in the Graham patent as follows:

"The Graham fulcrum plate is novel in having a back pivot in loose contact allowing free pivotal motion of the plate and yet firmly holding it in place against any longitudinal or horizontal movement, and his said fulcrum plate is novel in having radial movement up and down through the opening way and is novel in having a pivot on both ends, that is the fixed pivot pin at the back and the moveable T head pivot at the front, and the whole bracket or fulcrum assembly is novel in having the two fulcrums, one against the rigid face or place above the shank where it enters the bracket and the other at the front end of the fulcrum plate beneath the shank, and probably the other end of the fulcrum plate also becomes a fulcrum in some movements.

"The moveable fulcrum plate below and the rigid bracket face above clampingly and yet yieldingly hold the front end of the shank in between when same is in place and as I recall that is another novel arrangement.

"The spring rod does the double duty of a link to transmit the force of the spring tension to the fulcrum plate and shank and a brake to limit the backward play of the shank in the bracket.

"The whole bracket shows the further novelty of having only one compact housing or attachment for the shank between its beam end and its ground end, with the object of anchoring the shank while retaining unusual motility, in order on one hand that the free resiliency of the shank and tool will carry same over rocks and other obstructions in the soil, and on the other hand will facilitate the pumping action and plowing performance in operation."

While these findings are ably and clearly expressed, it is not necessary that we find the Graham patent to possess novelty in each and every respect mentioned.

7. Appellants state in their brief:

"We freely recognize that none of the prior patents can be read on the Graham structure because of the absence of one or more of the Graham elements in each of the prior patents, nor can the Graham claims be read on the Valley City device. None of the prior structures reveal a spring rod which performs the dual function of transmitting the pressure of the springs and at the same time carries the full pulling load upon the shank. None of the prior structures reveal the precise fulcrum plate or fulcrum member construction of Graham. We respectfully submit however that Graham's distinctions from the prior art are mere mechanical alterations that do not rise to the dignity of invention."

tool which did not perform satisfactorily in operation and was never manufactured commercially, whereas the Graham spring clamp has effectively resolved the problems encountered and has been commercially successful. We think the proof on this issue amply supports the District Court's finding that the Valley City device does not anticipate the combination of the Graham patent. See Minerals Separation, Ltd. v. Hyde, 242 U.S. 261, 270, 37 S.Ct. 82, 61 L.Ed. 286; Carson v. American Smelting & Refining Co., 9 Cir., 11 F.2d 766, 770–772; Morrill v. Automatic Industries, D.C.W.D.Mo., 93 F.Supp. 697, 703–704. The development of that device by local farmers is, therefore, insufficient to negative the invention existent in the Graham patent, or to reveal that no more than routine mechanical skill was involved in its conception. Cf. Graham and Graham-Hoeme Plow Co., Inc. v. Jeoffroy Mfg., Inc., 5 Cir., 206 F.2d 769, decided this date.

Alternatively, appellants insist that, even though the Valley City device may not anticipate the Graham structure and its conception by local farmers not be conclusive as to mere mechanical skill rather than patentable novelty being involved, each of the elements of Graham were clearly present in the prior art, "though not in the particular form, shape, position or arrangement as disclosed in Graham". As in the companion appeal, supra, in which the parties are reversed, the argument is advanced that the usual presumption of validity accompanying the issuance of the patent is largely disspelled because "the prior art considered by the Patent Office was virtually nil and certainly was not the most pertinent prior art." See Jacuzzi Bros. v. Berkeley Pump Co., 9 Cir., 191 F.2d 632, 634. Appellants here refer to a number of prior patents in the agricultural implement art not considered by the Patent Office, which they allege either anticipate the Graham structure, or reveal its conception as embodying only the routine skill of an ordinary workman, rather than invention. Among the prior art patents cited are Dunbar, No. 211,003, Carter, No. 231,268, Moore, No. 503,288, Lamprell & Cook, No. 1,141,804, Bobeldyk, No. 2,424,014, and the

Australian patent to Traeger, No. 111,910. While a careful review of these prior patents does reveal that some of the elements present in the Graham structure, such as ground working tools with a vibrating or trembling operation and spring release devices to permit clearing of obstructions, were known to the prior art; we do not think they reveal, either singly or in the aggregate, substantially the same combination, structure, and mode of operation exhibited by the Graham patent in such manner as to constitute anticipation thereof.

▮▮ Appellants rely upon the rule that in a combination patent it is not necessary that all of the elements be found in a single prior art structure in order to constitute anticipation, provided each of the elements is clearly disclosed thereby. See Lyman Gun Sight Corp. v. Redfield Gunsight Corp., 10 Cir., 87 F.2d 26, 28; Electric Vacuum Cleaner Co. v. P. A. Geier Co., 6 Cir., 118 F.2d 221. Insisting that each of the elements present in Graham was already old, and that no new function or relationship arises in combination, they contend that, "by standards appropriate for a combination patent these claims are invalid." Great A & P Tea Co. v. Supermarket Equipment Corporation, 340 U.S. 147, 148, 71 S.Ct. 127, 128, 95 L.Ed. 162; Ritchie v. Lewis-Browning Mfg. Co., 5 Cir., 196 F.2d 434, 437.

Though we are constrained to agree with appellants and the District Court that the Supreme Court in the A & P Tea Co. case, supra, has enunciated a more strict test of invention than existed theretofore, we think the fact that some of the elements in Graham were admittedly known to the prior art still would not preclude its validity, or negative any invention therein, so long as the Graham combination produces a new and useful result in a substantially different way. See E-I-M Co., Inc. v. Philadelphia Gear Works, Inc., 5 Cir., 205 F.2d 28; Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, 790–791. We think the basic fallacy of appellants' position as to the lack of invention in Graham lies in their attempt to show anticipation by separating the entire combination into its component elements and,

in the light of hindsight, to expose them piecemeal as already known to the agricultural art. This form of attack on the validity of a patent received early disapproval by the Supreme Court in Parks v. Booth, 102 U.S. 96, 104, 26 L.Ed. 54;[8] see also Williams Iron Works Co. v. Hughes Tool Co., 10 Cir., 109 F.2d 500, 506. We think appellants fail to give due consideration to the fact that the District Court not only found novelty in certain structural features of the Graham device, but further found that the combination itself produced a new and useful result which amounted to invention. Without detailing its structural features at great length, it seems to us that, from the evidence and the various exhibits, the District Court was justified in its findings of novelty in the Graham fulcrum assembly and its unique method of operation [see Footnote (6), supra]. Independently of those findings, we think the evidence fairly establishes that the patentee, Graham, was the first to perfect the idea of resilient and frictional engagement of the shank of a ground working tool between a fixed part and a movable part, or between the bracket on the H-Beam and the fulcrum plate pivotally mounted on the bracket. His production of an efficient mounting for a ground working tool shank that would permit it to rock or vibrate, and yet obviate the necessity of it being hinged directly on a fixed member, as in the Valley City device and the prior art, was novel both in method of operation and result accomplished, and, we think, entitled him to a valid patent on the combination claimed. The Graham patent may not here be invalidated under the tests for invention laid down in the A & P Tea Co. case, supra, since that case involved only uniting old elements "with no change in their respective functions," whereas the patent here involved combines both old and new elements to produce a new result. See 340 U.S. 147, 151, 152, 71 S.Ct. 127, 130.

The further contentions that the Graham patent was void because of "vague and indefinite specifications and claims", and because "the claims are much broader than the specifications and any invention disclosed thereby", are without merit, for appellants' expert, Fishleigh, admitted that anyone skilled in the art could construct an operative device in accordance with the teachings of the patent claims, and a review of them convinces us that they are no broader than reasonably necessary to support the combination claimed.

Irrespective of the validity of the Graham patent, appellants attack the District Court's finding of infringement by asserting that the Graham combination, as a mere secondary or improvement patent in a crowded field, is entitled to protection only within the narrowest limits; that such patent having been issued to cover the combination only and not the component elements thereof, the absence of an element or its mechanical equivalent in the accused Jeoffroy structure is sufficient to avoid infringement. See Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 195 F.2d 645, 649. They insist that the expert testimony, as well as the physical exhibits and drawings, reveal that at least one or more of the elements in each claim of Graham is not literally present in the Jeoffroy device, and that their own structure, though capable of functioning in a pumping manner under some conditions, does not pump constantly under normal conditions in accordance with the claims and teachings of Graham. However, there is testimony by the patentee, Graham, and appellees' expert, F.

---

8. In that case Mr. Justice Clifford, speaking for the Court, stated the rule as follows:

"Where the thing patented is an entirety, consisting of a separate device or of a single combination of old elements incapable of division or separate use, the respondent cannot make good the defense in question by proving that a part of the entire invention is found in one prior patent, printed publication, or machine, and another part in another, and so on indefinitely, and from the whole or any given number expect the court to determine the issue of novelty adversely to the complainant." 102 U.S. at page 104.

See also Bates v. Coe, 98 U.S. 31, 25 L. Ed. 68; Atlantic Refining Co. v. James B. Berry Sons Co., 3 Cir., 106 F.2d 644, 650; Pointer v. Six Wheel Corporation, 9 Cir., 177 F.2d 153, 160.

C. Fenton, that each and every element of Claims 1, 2, 4, 5, 6, 7 and 8 of the Graham patent with minor structural variations or the substitution of mechanical equivalents, is exemplified in the Jeoffroy Structure. Moreover, the District Court, prior to its finding of infringement, had the benefit of a demonstration or view of both devices in actual simultaneous operation, and concluded therefrom that the Jeoffroy device did exhibit a similar vibrating or pumping action to that of Graham, though the Court took into consideration appellants' complaint that the test was not conducted under the most favorable circumstances.[9] The Jeoffroy structure admittedly reveals two coil springs, whereas the claims of the Graham patent and the device itself exhibit only one, but this alteration does not avoid infringement. See Royal Typewriter Co. v. Remington Rand, 2 Cir., 168 F.2d 691–692; Skelton v. Baldwin Tool Works, 4 Cir., 58 F.2d 221, 227. The Jeoffroy device further reveals a different shank arrangement and different shaped fulcrum plate, but the forward end of the shank is still held between the fixed portion of the clamp and the fulcrum plate in a substantially similar manner to that revealed in Graham, and we do not think these structural variations are sufficient to avoid infringement. Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 728.

While it is true, as appellees frankly concede, that Jeoffroy does not exhibit the Graham opening in the shank with the spring rods extending there-through, it does provide the T-head on the fulcrum plate and exhibit the recesses and nibs in those working parts which, in substance, constitute the substantial counterpart of these omitted elements. And though no longitudinal movement is intentionally designed into the shank of Jeoffroy, the District Court found, and the device itself reveals, that some longitudinal movement, as in Graham, is inevitable because of "necessary manufacturing tolerances and operational wear in the nib and socket fittings of the shank, fulcrum member and bracket", though it further appears that such longitudinal movement is not an essential operative feature of the device. In any event, the claims of Graham measure the invention and Claims 5 and 6 do not specify any longitudinal movement. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122.

9. The Court's finding in regard to the field demonstration of the two devices in actual operation reads as follows:

"Upon the agreement and initiative of respective counsel, and during the trial herein, the plaintiffs' and defendants' spring clamps were demonstrated in actual field operation in the presence of the presiding judge. The tests were made both in plowed and unplowed land. The plowed land was not compact but comparatively loose, and the unplowed land was firm and quite tight. It was observed by comparative tests that when the shank and ground tool was used at a depth of 5 or 6 inches in the plowed land that obvious pumping action took place with the Graham spring clamp but no noticeable pumping action took place with the Jeoffroy spring clamp. In the plowed land at a depth of about 8 inches and over more pumping action took place with the Graham spring clamps and some pumping action took place with the Jeoffroy spring clamp. In the unplowed land strong pumping action took place with the Graham spring clamp and only moderate pumping action with the Jeoffroy spring clamp. Whenever the two mechanisms will both pump under given conditions, the agitation usually or perhaps always will be definitely greater with the Graham clamp. The principal reason for these variations in performance is that the present Graham spring clamp is built with only one spiral spring and the present Jeoffroy spring clamp is built with two spiral springs, and at a given setting the spring tension is much greater on the Jeoffroy than the Graham spring clamp. The demonstrations referred to were not on a parity with ordinary field use and operation, as only two shanks, one held by the Graham clamp and the other by the Jeoffroy clamp, or one thereof, were or was attached to the plow used in said tests, while in ordinary field service a battery of several shanks and ground working tools, generally some 8 and 10, are ordinarily attached to the plow, but on the day in question tests attempted with a battery of shanks attached to the plow were unsatisfactory and inconclusive for the reason that the tractor did not have enough power to properly pull the loaded plow."

We conclude that such alterations in the form of mechanically equivalent elements do not avoid infringement where, as here, the accused device exhibits the essential elements of the patent claims, for " 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' " Graver Tank & Manufacturing Company, Inc., v. Linde Air Products Company, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097; Chicago Pneumatic Tool Co. v. Hughes Tool Co., 10 Cir., 97 F.2d 945, 947; Hunt v. Armour & Co., 7 Cir., 185 F.2d 722, 728; Royal Typewriter Co. v. Remington Rand, 2 Cir., 168 F.2d 691, 692. Furthermore, in view of the District Court's findings being based on a demonstration of the Graham and Jeoffroy devices in actual operation, we cannot say that his finding of infringement is clearly erroneous. Graver Tank & Mfg. Co., Inc., v. Linde Air Products Co., supra, 339 U.S. at pages 609–610, 70 S.Ct. 854; see also Hazeltine Research v. Admiral Corp., 7 Cir., 183 F.2d 953, 954. As Judge Lindley, speaking for the Seventh Circuit, in the recent case of Porter-Cable Machine Co. v. Knives & Saws, Inc., 204 F.2d 21, 23–24, has appropriately stated:

"The court heard expert witnesses, viewed demonstrations and concluded that this element was new in Heckroth's combination; that he achieved valuable advantages over the prior art, resulting in invention, and that defendant infringes. In view of this state of the record, of course, we can not set aside the finding of validity unless it is clearly erroneous, Graver Tank Co. v. Linde Air Products Co., 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672, or unless we can say, as a matter of law, that, on the admitted facts, the standard of patentable invention required by the statute of the United States has not been met. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 95 L.Ed. 162. In view of the state of the record and the opportunity of the District Court to view demonstrations, which we do not have, we think our decisions in General Time Corp. v. Hansen Mfg. Co., 7 Cir., 199 F.2d 259 and Sales Affiliates v. National Mineral Co., 7 Cir., 172 F.2d 608, are inapplicable here."

See also Standard Computing Scale Co. v. Detroit Automatic Scale Co., 6 Cir., 265 F. 281.

■ Finally, while we entertain no doubt that the corporate appellee, as the exclusive manufacturer and distributor of the Graham patented structure, has such an interest as would justify awarding it relief,[10] we think it inappropriate and premature for this Court now to consider or pass upon the District Court's finding that the infringement was willful and deliberate, and whether such finding justified or required an award of increased damages and attorney's fees under 35 U.S.C.A. § 70 [1952 Revision, 35 U.S.C.A. §§ 283–286, 290]. Those questions should properly await final judgment. Patterson-Ballagh Corp. v. Moss, 9 Cir., 201 F.2d 403, 408.

The judgment is, therefore, modified so as to eliminate that part decreeing that the infringement had been willful and deliberate and, as so modified, it is affirmed.

Modified and affirmed.

10. The license from the patentee, Graham, to the corporate appellee, Graham-Hoeme Plow Co., Inc., granted "full and complete use" of the patent in suit, as in the companion appeal, which language is more in keeping with an exclusive license than a bare right coextensive with that of the owner, Graham. Cf. Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 2 Cir., 59 F.2d 998, 1000.