**JEOFFROY MFG., Inc.**

v.

**William T. GRAHAM.**

**William T. GRAHAM**

v.

**JEOFFROY MFG., Inc.**

No. 15117.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1955.

Rehearing Denied March 9, 1955.

S. Tom Morris, Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, Tex., of counsel, for appellant.

Claude A. Fishburn, Kansas City, Mo., Clayton Heare and William Q. Boyce, Amarillo, Tex., Orville O. Gold, Kansas City, Mo., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

RIVES, Circuit Judge.

This suit was filed by Jeoffroy Mfg., Inc., on May 15, 1952, for declaratory judgment to determine whether a spring trip device used on its commercially manufactured plow infringes United States Patent No. 2,493,811, issued on January 10, 1950 as "Vibrating Plow and

**512**

Mounting Therefor", and owned by William T. Graham.[1]

By counterclaim, Graham charged Jeoffroy with infringement of its aforementioned patent, No. 2,493,811, and also with infringement of its United States Patent No. 2,627,798, issued February 10, 1953, and entitled "Clamp for Vibrating Shank Plows."

On a prior appeal involving the same parties and Graham's No. 2,493,811 patent, this Court affirmed with immaterial modification the judgment of the district court holding that patent valid and infringed by a device formerly manufactured and sold by Jeoffroy. See Jeoffroy Mfg., Inc., v. Graham, 5 Cir., 206 F.2d 772, certiorari denied 347 U.S. 920, 74 S.Ct. 515, 98 L.Ed. 1075.

The district court held patent No. 2,-493,811 valid and infringed, and further held patent No. 2,627,798 invalid for lack of invention.[2] Jeoffroy has appealed only from that portion of the judgment

1. Both the corporate appellant, Jeoffroy Mfg., Inc., and the individual appellee, William T. Graham, are located at Amarillo, Texas, where they are competitively engaged in the manufacture and sale of commercial plows. To avoid confusion in referring to the parties in the two consolidated appeals, they will hereinafter be called Jeoffroy and Graham, respectively.

2. The district court's opinion is succinctly set forth in two letters to counsel for the respective parties, which were filed of record but are not officially reported. The most pertinent portions of those letters read as follows:
"Patent No. 2,493,811
"The Graham Patent 811 may rank as a pioneer patent within the sense of some strong cases, including a number of combination patents, but I lean to the opinion that it is ruled rather by the teaching of other leading cases, and embodies a meritorious, yet not an outright pioneer, invention. Even if it is only a meritorious invention, being of proven worth, the patentee is entitled to claim a substantial range of equivalents, consistently with the context of the patent, the Patent Office history and the prior art and use. * * *
"The said Graham patent has already been adjudged valid by this Court in an earlier case, and in that previous trial the prior art was examined in reference to the validity of the patent. The inquiry is not being retraced from that standpoint at the present time, but has been noticed as it bears on the scope of claims and proper range of equivalents under the said patent. * * *
"Next in order is the question of infringement. The Graham patent, claim 5, in the element of a shank between the fixed member and the moveable member of the bracket and in moveable engagement with the said parts will not read on the accused Jeoffroy device. The argument on the point of position that the

stirrup and the yoke in the Jeoffroy structure suffice to put the shank between a part of the moveable member and the fixed member of the Graham construction is too far fetched. * * * Likewise the correlated claim language 'in moveable engagement with the said parts' probably will not read on the accused Jeoffroy structure. * * *
"The fact that the Graham patent, claim 5, cannot be read literally on the accused device is not at all conclusive against infringement. The doctrine of equivalents must be reckoned with, and most often comes into play with apparatus or mechanical inventions. * * * True in the accused device the shank is placed below the moveable member of the bracket, unlike the patent arrangement above said moveable member, but that is simply a reversal of position, and the Courts speak with one voice in saying that mere transportation of members in a combination structure, where there is no actual change of function, is just an equivalent and fails to avoid infringement. * * *
"The accused structure has simply supplanted the dual function of the spring bolt in the patented structure by the expedient of a new element, and with that change cessation of longitudinal motion of the shank follows. The mere elimination of virtually all of that particular motion, which was not indispensable anyway to the principle of the invention claimed in the Graham patent, results incidentally from an example of using two elements to do what was done before by a double duty element and such an alteration will not avoid infringement of the patent. * * *
" * * * my conclusion (is) that the Graham patent, as aided by the doctrine of equivalents, is infringed in claims 5 and 6 by the Jeoffroy structure.
"Patent No. 2,627,798
"The recent Graham structure covered in the above numbered patent, issued in

holding the former Graham Patent infringed, while Graham has appealed from the holding as to invalidity of his later improvement patent for lack of invention. In view of this Court's decision on the prior appeal, no issue is presented as to the validity of patent No. 2,493,811, the basic question confronting us for determination being whether that patent is infringed by the accused device now manufactured and sold by Jeoffroy. However, Jeoffroy does defensively assert the alleged invalidity of Graham's improvement patent No. 2,627,798, both as anticipated in fact by the prior art and invalid in law for lack of invention, though it frankly concedes infringement of that patent by its new structure if the patent is valid.

### I. Issue of infringement of Patent No. 2,493,811.

We think the basic structure, mode of operation and purpose of Patent No. 2,493,811, hereinafter simply referred to as the Graham 811 patent, is adequately set forth in our former decision and need not be restated here. Jeoffroy Mfg., Inc., v. Graham, supra, 206 F.2d at pages 773–774. Only claims 5 and 6 of this patent are here involved.[3] Our inquiry on this infringement issue is

1953, is a plain counterpart of the accused structure made by Jeoffroy. The same reasons for finding infringement against Jeoffroy, also disclose invalidity of this latest Graham patent. It is a case of double patenting between the two Graham patents, and so under the ban of a well settled rule of patent law. If the said patent were not invalid as a double patent, in any event it would be for lack of invention. This patent 798 does mark an improvement bettering efficiency and economy over patent 811, but that is not enough to constitute invention. The said patent 811 was the spring board and from that vantage background the next step from that structure to the structure of patent 798, was well within the capacity of a skilled mechanic.

"Counsel will submit a decree on the cross action as to the infringement of patent 811, and adjudging patent 798 invalid * * *"

The above quotations are from the Court's letter opinion, dated September 9, 1953, announcing its original decision. In overruling Jeoffroy's motion for rehearing, it further amplified its prior letter opinion as follows:

"Plaintiff's counsel * * * insist that the shank in the latest Jeoffroy bracket, by being bolted towards the front end of the movable fulcrum plate, is, in effect, hinged directly to the plow frame. Thus it is likened to the operation of the prior art in contrast to that of Patent No. 811. It is difficult for me to see how such claim is much better for this last Jeoffroy type than in the earlier litigation. Of course, the nib and socket pattern in that earlier type did not hold the shank and the fulcrum plate together so rigidly as can be done by the nut and bolt in the present type, but I think the difference inconsequential from the standpoint of the present inquiry. In my opinion, consistency is lost in any theory that the prior art was insufficient to shelter the earlier Jeoffroy type, but is sufficient to shelter the latest Jeoffroy type. * * *

" * * * The argument in support of the motion before the Court stresses the contention that the modes of operation are entirely different in the Graham structure and the Jeoffroy structure. The gist of it is that the Graham structure features a shank nested between a movable and a fixed member of the bracket and without any rigid attachment, while the Jeoffroy structure uses a shank tightly bolted to the movable member of the bracket, like its alleged prototypes in the mechanical art and that by such assembly it is, in effect, hinged directly on a fixed member of the bracket or plow frame. I am unable to agree with that position. In my opinion, the shank mounted in the way stated retains tangibly more useful motion and vibration than would be true if it were actually attached rigidly to a fixed member. * * *

" * * * the only essentials, as I see, are a finding of infringement of Patent No. 811 and invalidity of Patent No. 798, together with the conclusion that defendant is entitled to injunctive relief, but reserving the question of damages for future determination. * * *"

3. These two claims in issue of Graham's 811 patent read as follows:

"5. In a plow having a frame and a ground working tool provided with a shank adapted to rock relatively to the frame when the plow is in operation in a forward direction, a mounting for attaching and supporting the shank of the ground working tool from the frame including a clamp fixedly attached to the frame, the clamp including a part that is

further narrowed to a consideration of the specific language of claim 5, in view of Jeoffroy's admission that, while the bracket of its accused device exhibits some divergence in structure from the channel shaped formation of claim 6, it must nevertheless be conceded "that if we infringe Claim 5 we likewise infringe Claim 6."

We think the district court properly held that claim 5 could not be read in express terms upon the new Jeoffroy structure, since the Jeoffroy shank is not "between the fixed member and the moveable member of the bracket and in moveable engagement with the said parts." (See footnote 2, supra.) Like the district court, we reject as "too far fetched" Graham's insistence that the position of the Jeoffroy stirrup and yoke below the shank sufficiently locates the shank between at least a part of the movable member and fixed member so as to satisfy the literal language of the claim. Graham's insistence in this respect, like his further contention that the Jeoffroy structure meets the call of claim 5 for a shank "in movable engagement with the said parts" because of the looseness in the bolt fitting which connects the yoke, shank, and hinge and the small amount of play at the forward end of the shank between the stirrup and yoke, seems to us to stretch the express wording of claim 5 beyond the fair intendment of the language used·in order to cover a substantially divergent structure. Irrespective, however, of our adoption of the district court's conclusion that no

infringement exists in express terms, there nevertheless remains for our consideration the question of whether the trial court justifiably held claims 5 and 6 of Graham's 811 patent infringed under a broad application of the doctrine of equivalents.

We agree with the district court's statement that Graham's 811 patent "embodies a meritorius, yet not an outright pioneer invention," and that it is entitled to a range of equivalents consistent "with the context of the patent, the Patent Office history and the prior art and use." (Footnote 2, supra.) For reasons hereinafter stated, however, we disagree with its conclusion that the doctrine of equivalents should be broadly applied in this instance so as to bring the new Jeoffroy structure within the condemnation of claims 5 and 6.

If the litigation involving this patent were of first impression, we might appropriately concede that Graham's protection thereunder ought not be confined to the type structure disclosed by the patent claims and specifications. Under such circumstances, the trial court's finding of a mere transposition of members in the accused structure, with "no actual change of function", might be sufficient to warrant its finding of equivalence. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097. However, we think the prior course of this litigation, in the Patent Office and in this Court, justly requires such limitation of the scope of the Graham 811 claims in issue as would

fixed to the frame and another part pivotally mounted on·the fixed part, the shank having· an end portion thereof between said parts and in movable engagement with the said parts, a coil spring having one end thereof in engagement with one of said parts, means at the other end of the spring connected with the other of said parts to maintain the spring in position and for holding the said parts of the clamp with the end portion of the shank therebetween in their resiliently held-together association so that when the shank is rocked or moved the end portion of the shank between the parts will cause the movable

part of the clamp to move away from the fixed part along with said end portion and back to normal position with the end portion of the shank contactingly held between the two parts, and means on one of the parts engageable with a part of the end portion of the shank to prevent disengagement of the shank from the clamp but to allow same to rock.

"6. In a device as claimed in and by claim 5, wherein the fixed part of the clamp is of channel shape formation and the said end portion of the shank is disposed therein and prevented from moving laterally."

necessarily prevent Graham from successfully urging infringement by the new Jeoffroy device.

In the former suit involving the old infringing Jeoffroy structure, Jeoffroy Mfg., Inc., v. Graham, supra, in order to distinguish the inventive concept embodied in his 811 patent from the prior art, Graham repeatedly and successfully urged upon the district court and this Court that his patent was not anticipated by a structure in which the shank is either directly pivoted on a fixed member,[4] or is attached to a hinge member that is directly pivoted on the fixed member, yet he now contends that the new Jeoffroy structure, which we think embodies substantially the type attachment there distinguished by him, infringes this same patent. Moreover, Graham also testified in both the former and present suits that longitudinal motion of the shank relative to the hinge member was at least an important part of his invention,[5] yet he now urges that the absence of such motion in Jeoffroy's new structure is practically immaterial and insufficient to avoid infringement.[6] Fur-

thermore, in filing application for his improvement patent, No. 2,627,798, with the Patent Office, which patent, if valid, both parties agree is infringed by the practically identical new Jeoffroy device, Graham contended that his shank was "rigidly secured" to the hinge member,[7] yet he now asserts in order to sustain his present charge of infringement that the new Jeoffroy device, its structural twin and counterpart, is "in movable engagement" with the hinge member. Similarly, in prosecuting his new 2,627,798 patent application before the Patent Office he successfully urged, in effect, that patentable novelty and invention existed therein over his old 811 patent because, among other features, his different method of attaching the shank in his improvement patent, i.e. its location beneath the hinge member and rigid attachment thereto, resulted in a different mode of operation and distribution of stresses from that which had precipitated an inordinate amount of wear in the old sliding pivot and fulcrum assembly of his 811 patent,[8] yet he now contends that the new Jeoffroy structure, which con-

---

4. For example, in his brief on the former appeal, Graham made the following argument as to validity of his 811 patent, the substance of which was adopted by this Court in its opinion:

   "Prior art patents relied on by Defendants have not contributed anything to this art and particularly the art of resiliently and frictionally holding the shank of a ground working tool between a fixed part and a movable part, i.e., the bracket on the H-beam and the fulcrum plate pivotally mounted on the bracket. Graham was the first to produce a device which successfully provided for mounting of a ground working tool shank that would rock and yet not have the shank hinged directly on a fixed member, this new structure providing an action of the ground working tool never before accomplished, and an entirely different distribution of forces which was not possible in prior devices."

5. Graham's testimony in the present suit on this issue reads as follows:

   "Q. Do you consider longitudinal movement between the fulcrum member and the shank—or to put it another way —longitudinal movement of the shank

relative to the fulcrum member in your patented structure as shown in your old patent 2,493,811 to be an important feature of that patent? A. Yes, I think it's rather important.

   "Q. Do you consider that as a part of the invention, the alleged invention, Mr. Graham? A. Yes, I think so."

6. See Paragraph 5 of trial court's findings, footnote (2), supra.

7. The file wrapper of Graham's new patent, No. 2,627,798, reveals that Graham there represented one of the objects of his alleged invention was "to provide a mounting which includes a fixed part and a movable part pivotally connected with the fixed part and having a shank attaching portion to which the shank is *rigidly secured* and resiliently retained on the fixed part." (Emphasis supplied.)

8. For example, in response to the Patent Examiner's original rejection of all of the claims of his improvement patent as anticipated by his old 811 patent Graham's counsel argued as follows:

   "At the first of the interviews the Examiner's rejection of the claims on applicant's patent was discussed. It was

cededly duplicates the structure of his new patent, nevertheless retains that same degree of flexibility and method of operation of his old 811 patented structure as now fairly entitles him to prevail on the issue of infringement.[9]

Graham argues, in substance, that the claimed inconsistencies in his various positions before the Patent Office, the district court and this Court, are more illusory than real; that in defensively asserting these alleged inconsistencies Jeoffroy is seeking to avoid infringement on a new theory and technical basis by quoting prior statements and arguments in other independent and materially unrelated proceedings out of context, and either according them a binding effect never intended or interpreting the claimed structural and operational differences between Graham's 811 patent and the teachings of the prior art then relied upon as conclusive against infringement here, when at most the previously asserted distinguishing features were merely some among many which could have been urged to avoid anticipation and establish validity; that, in any event, the omission of these elements in the accused device is insufficient to avoid infringement under the applicable range of equivalents. In view of these contentions, we have re-examined Graham's arguments on the former appeal, as compared with those now urged by him, but we cannot agree that they are immaterial to his present charge of infringement, or that they do not effectively nullify the force which might otherwise flow from the trial court's finding and his argument that the new Jeoffroy device exemplifies a mere colorable departure in structure and method of operation from his 811 patent which is insufficient to avoid infringement. (Footnote 2, supra.) While we expressly disavow any intimation of actionable bad faith on the part of the patentee, Graham, in assuming positions for the purpose of avoiding anticipation and establishing validity of both his 811 and improvement patent, which appear to us inconsistent with positions now assumed for the purpose of prevailing on the present issue of infringement, we do hold, contrary to, but in the language of the district court, that "the context of the patent, the Patent Office history and the prior art and use" fairly limit and restrict the scope of Graham's monopoly under 811 to a structure wherein the shank is mounted between a fixed part and a movable part, in "movable engagement" with each of said parts, and clampingly held thereby; that the prior art, the physical exhibits, the testimony, and this Court's decision on the former appeal,[10] viewed as a whole,

---

pointed out that the present construction is an improvement over the structure disclosed in applicant's (811) patent. The patented structure has proved a highly commercial success and has made this type of plow satisfactory for substantially all plowing conditions. It was found, however, that wear occurred between the shank and the fixed part of the clamp where the fulcrum shifted from the pin to that portion of the fixed part of the clamp directly at the rear end of the clamping face thereof. It was pointed out that the present construction avoided this wear by inserting the movable part between the plowing shank and the fixed part and by locating the pivot to avoid rubbing contact of the pivoted part with the fixed part of the clamp. With this arrangement the vibratory movement of the shank acted on the pivoted part or shank attaching member of the clamp. This shifting of the wear point to the pivoted part facilitates repair and replacement when wear does occur."

9. The trial court apparently had no opportunity in its original decision to consider from this Court's viewpoint the effect of Graham's inconsistent positions as limiting the scope of his 811 claims, since its original letter decision was rendered on the same day as this Court's decision on the former appeal, i.e. September 9, 1953.

10. While it is true that this Court, in its decision on the former appeal, did not expressly restrict the scope of Graham's 811 claims to the precise structure disclosed by the patent, we think the opinion itself fairly evidences this Court's acceptance of Graham's repeated arguments that the essentially novel concept of that invention was "the idea of resilient and frictional engagement of the shank of a ground working tool between

fairly establish that the new Jeoffroy structure may not logically be viewed as embracing the essential elements of the 811 patent claims, either literally or by equivalence, and that the trial court's finding of infringement of claims 5 and 6 of the Graham 811 patent may not therefore be sustained. Cf. Livesay Industries, Inc., v. Livesay Window Co., 5 Cir., 202 F.2d 378, 382. See Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097; Westinghouse v. Boyden Power-Brake Co., 170 U.S. 537, 568, 18 S.Ct. 707, 42 L.Ed. 1136; Jungersen v. Baden, 2 Cir., 166 F.2d 807, 809; Wood v. Peerless Motor Car Corp., 6 Cir., 75 F.2d 554, 555; Southern States Equip. Corp. v. USCO Power Equip. Corp., 5 Cir., 209 F.2d 111, 120; Stewart-Warner Corp. v. Lone Star Gas Co., 5 Cir., 195 F.2d 645, 648; Independent Pneumatic Tool Co. v. Chicago Pneumatic Tool Co., 7 Cir., 194 F.2d 945, 947; Chicago Forging & Mfg. Co. v. Bade-Cummins Mfg. Co., 6 Cir., 63 F.2d 928, 929–930.

II. Validity of Graham's Improvement Patent, No. 2,627,798.

The application for Graham Patent No. 2,627,798, hereinafter simply called 798, was filed on August 27, 1951, and the patent issued February 10, 1953. It relates to an improvement of the original structure revealed by Graham's old 811 patent. While it is basically akin to the structure thereby disclosed and described in our former decision, Jeoffroy Mfg., Inc., v. Graham, supra, 206 F.2d at pages 773–774, it does exhibit distinguishing structural features in that the pivot pin and fulcrum plate have been relocated above the shank, instead of below the shank as in Graham's old 811 patent, and the fulcrum plate has a stir-

rup device which supports the shank at a point adjacent the pivot pin. The 798 patented structure also operates on a fixed, rotating pivot instead of the loose, sliding pivot of the old Graham 811 device.

Jeoffroy concedes that Graham's new 798 patent exhibits a divergent structure in the following particulars: (1) the location of the pivot pin above the shank; (2) the short bolt which attaches the shank and shank attaching member to each other at the forward ends thereof; (3) the rearward extending lugs on the fixed member and the upward extending lug on the hinge member, through which the pivot pin is inserted to form the pivot; and (4) the downward extending loop or stirrup which embraces the shank at the rear of the shank attaching member. According to Jeoffroy, the sum of the above changes constitutes no more than a manufacturer's modification made for the purpose of reducing operational stress and wear in the basic 811 patent structure, which the trial court correctly viewed as "within the capacity of a skilled mechanic," and therefore lacking in invention.

On the other hand, Graham contends that, while his 798 patent uses "the basic idea of the fulcrum plate and the movable engagement of the shank", it in effect produces an old result in a more advantageous way by substituting the fixed and rotating pivot, to some extent revealed by prior art devices, for the wear-producing, sliding and shifting pivot of 811, at the same time retaining by means of its particular shank and pivot arrangement substantially that same degree of flexibility and resiliency which was such an advantageous feature of its 811 predecessor; that claims 1 and 2 of 798 [11] are not invalid for "double patenting"

---

a fixed part and a movable part", etc. See 206 F.2d 777, and that he may not now extend the scope of his 811 monopoly to embrace the substantially different Jeoffroy structure here claimed to infringe.

11. We think these two detailed and lengthy claims of Graham's 798 patent, the only

ones granted by the Patent Office, need not be set forth in haec verba here. Generally, they are directed to the same type improved clamp structure and shank arrangement exhibited by the new Jeoffroy device, though specifically they recite means for maintaining the shank in "constant and continuous contact" with the shank attaching member.

and lack of invention, as held by the district court, but "clearly specify a particular arrangement and relationship of the parts that is not found in the Graham (811) Patent," [12] as evidenced by issuance of 798 by the Patent Office after 811 was distinguished as a prior reference; that the claims of 798 further cannot be read upon the structure of 811 either literally or by equivalence; that 798 actually reveals a valid combination and patentable improvement over 811 and the most pertinent other prior art and use,[13] which was beyond conception by an ordinary artisan in the agricultural implement trade; finally, since infringement is admitted, Graham is clearly entitled to the injunctive relief and accounting prayed for.

With commendable candor Jeoffroy further concedes that "its accused structure cannot be distinguished in any material respect from Patent No. 2,627,798"; that "the Trial Court was clearly wrong in concluding that patent No. 2,627,798 is void as double patenting of the original Graham invention"; [14] that no "single prior reference patent or structure anticipates completely the claims of patent No. 2,627,798" and "the claims will not read on any one of the references because there are specific differences of structure and of function"; and that "unquestionably Graham's new patent structure is a definite improvement over the old." However, on the issue of anticipation, Jeoffroy does insist that the prior art "as a whole" contains "the storehouse of information from which any skilled workman could draw to effect the changes made by Graham," particularly since a number of the improvements adopted were separate-

ly indicated by various prior art devices such as Lamprell, Erdman, Drader, Traeger, Dunbar, Carter, Moore, the Danish patent to Petersen, and the Valley City and supposed Helfeld and McKee prior use devices. See and cf. Parks v. Booth, 12 Otto. 96, 104, 102 U.S. 96, 104, 26 L.Ed. 54, cited with approval in Jeoffroy Mfg., Inc., v. Graham, supra, 206 F.2d at page 777. On the issue of claimed invalidity vel non for lack of invention, Jeoffroy relies mainly on the Supreme Court's landmark decision in Great Atlantic & Pac. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, apparently the favorite sanctuary of alleged mechanical patent infringers, and vigorously insists that the stricter test of invention there enunciated and adhered to by former decisions of this Court is not met by Graham's 798 patent. See Ritchie v. Lewis-Browning Mfg. Co., 5 Cir., 196 F.2d 434, 437; Graham v. Jeoffroy Mfg., Inc., 5 Cir., 206 F.2d 769, 771–772; Robinson v. Digaetano, 5 Cir., 212 F.2d 1, 3.

Our interpretation of the prior art, the physical exhibits, and the testimony, however, compels us to disagree with the learned district court's conclusion that the 798 patent is invalid, either for "double patenting" or lack of invention. Though we do agree that 798, as an improvement combination, is not entitled to any broad degree of protection over 811, it still seems to us that its hybrid type structure combining the wear-resisting rotating pivot, in part reminiscent of the prior art, with the new shank and stirrup arrangement permitting some of that same advantageous flexibility inherent in the old 811 structure, reveals suf-

12. Compare this argument with Graham's argument on the infringement issue that his 798 patent's twin and counterpart, the new Jeoffroy device, is a structure substantially equivalent to that disclosed by his 811 patent.

13. A number of the prior art patents and uses principally relied upon as anticipatory of Graham's 798 patent are the same as those previously cited by Jeoffroy in his unsuccessful attempt to upset the validity of 811 on the former appeal. See

206 F.2d at page 776, and will not be specifically reviewed in this opinion.

14. Apparently, consistency and logic compels Jeoffroy's admission in brief that, if the trial court was wrong in its factual finding of equivalence between its new structure and Graham's 811 patent, which he asserts and we have held that it was, then Graham's 798 patent cannot logically be viewed as invalid for "double patenting".

ficient indicia of novelty and invention to justify limited protection. See Southern States Equip. Corp. v. USCO Power Equip. Corp., supra, 209 F.2d at page 118. Other factors strongly influencing and, we think, reinforcing our conclusion as to the validity of 798 are: (1) that presumption of validity which attends the grant of a patent by the Patent Office where, as here, it appears to have fully considered and distinguished the very prior art patents here principally relied upon as anticipation, Southern States Equip. Corp. v. USCO Power Equip. Corp., supra; (2) the rule that the burden of proof of invalidity is on the party seeking to upset a patent's prima facie validity from issuance, and that any reasonable doubt will be resolved against him,[15] (3) the further rule, long recognized by this Court, that an improvement combination is patentable even though its constituent elements are singly revealed by the prior art, where, as here, it produces an old result in a cheaper and otherwise more advantageous way;[16] (4) the trial court's findings and Jeoffroy's significant admissions, heretofore quoted, as to the improved efficiency and economy in the 798 structure, as well as the lack of disclosure thereof by any single device or group of devices in the prior art; (5) the fact that Jeoffroy himself apparently considered the 798 structure independently patentable over 811 and the prior art, as evidenced by his filing of an application for a patent on its counterpart and subsequent withdrawal thereof only when Graham's 798 patent was issued first; and (6) finally, the fact that the force which might otherwise attach to the eminent trial court's conclusion as to invalidity, insofar as based on testimony by Jeoffroy's witness, Witherspoon, that in his opinion the improvements embodied in 798 were within the capacity of an ordinary skilled mechanic, seems to us considerably weakened by the fact that this witness was admittedly not a patent expert, but only an engineer testifying for his first time in a patent suit.[17] We conclude, therefore, that Graham's 798 patent is not invalid, either for "double patenting" or lack of invention, but exhibits patentable novelty and invention not effectively anticipated by any of the prior art patents or alleged public uses relied upon. See Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983; Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 22 S.Ct. 698, 46 L.Ed. 968; Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, 790–791; Cline Electric Mfg. Co. v. Kohler, 7 Cir., 27 F.2d 638, 641; Carson v. American Smelting & Refining Co., 9 Cir., 11 F.2d 764, 770–772.

In response to Jeoffroy's intimation in brief that Graham's failure to manufacture commercially the device of his 798 improvement patent shows that he was more interested in extending the scope of his old 811 monopoly than in providing the public with an improved spring clamp device, we can only add that our patent laws have generally acknowledged the validity of the maxim, "prior tempore potior jure," regardless of whether a prospective patentee is guided by altruistic motives, and one who permits others to pre-empt him in securing monopoly protection for patentable devices must necessarily be confined to the struggle for recognition and success amidst the normal forces of competition,

---

15. See Title 35 U.S.C.A. § 282; Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983, 985; Radio Corp. of America v. Radio Engineering Lab., Inc., 293 U.S. 1, 7, 8, 55 S.Ct. 928, 79 L.Ed. 163; Hughes Tool Co. v. Robertson Rock Bit Co., Inc., D.C., 80 F.Supp. 809, affirmed 5 Cir., 176 F.2d 783.

16. Robertson Rock Bit Co. v. Hughes Tool Co., 5 Cir., 176 F.2d 783, 790, 791; Troup v. Cox, 5 Cir., 133 F.2d 83; O. K. Jelks & Son v. Tom Huston Peanut Co., 5 Cir., 52 F.2d 4, 8; Huston v. Barrett, 5 Cir., 23 F.2d 907.

17. While we recognize that the weight to be accorded the testimony of this witness was primarily for the trial court, we still believe it is an appropriate fact for our consideration in reviewing the trial court's finding of invalidity in what appears to us a close case.

unaided by the impetus of a statutory monopoly which rightfully adheres in another.

On the appeal of Jeoffroy Mfg., Inc., the judgment holding claims 5 and 6 of Graham's Patent No. 2,493,811 infringed by said Jeoffroy Mfg., Inc. is reversed. On the appeal of William T. Graham, the judgment holding the Graham Patent No. 2,627,798 invalid and dismissing the counterclaim as to said patent is reversed. The cause is remanded with directions to enter judgment holding that claims 5 and 6 of Graham's No. 2,493,811 patent are not infringed by the new Jeoffroy structure, but that Graham's No. 2,627,798 improvement patent is valid and infringed thereby, and for further proceedings not inconsistent with this opinion.

Reversed and remanded with directions.